IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
CHIEF JUDGE MARCIA S. KRIEGER

Civil Action No. 18-cv-02672-MSK-NRN

**GDHI MARKETING, LLC,**

    Plaintiff,

v.

**ANTSEL MARKETING, LLC,
THM MANAGEMENT, LLC,
CLAIRE LINDSAY,
ANNIE MULLEN,
BARBARA ROBLES, and
ELLEN SMITH,**

    Defendants.

---

## OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("GDHI") Motion for Preliminary Injunction **(# 46)**, for which the time for response briefs has not yet run[1]; and GDHI's Motion for Expedited Briefing and Determination **(# 48)** of the injunction motion, and the Response of Defendants Antsel Marketing, LLC, Claire Linsday, Annie Mullen, Barbara Robles, and Ellen Smith's (collectively, "Anstel") response.[2]

---

[1]     Pursuant to D.C. Colo. L. Civ. R. 7.2(d), the Court is sufficiently advised of the parties' positions to permit it to rule without awaiting further briefing.

[2]     Also pending is Defendants' THM Management, LLC's ("THM") Joinder **(# 51)** in Anstel's response. Although it is sufficient for a party to file a notice that it joins in and adopts the arguments made by another party in another filing, THM incorrectly docketed its Joinder as a "motion for joinder." To the extent that, administratively, the Court must adjudicate that "motion," the Court denies it as moot.

1

## I. Background

The Court assumes the reader's familiarity with the proceedings to date and offers only a summary. GDHI publishes, by direct mailing to selected households, a magazine consisting primarily of advertisements from home improvement contractors. In or about July 2018, the Defendants began publishing a competing magazine. GDHI contends that, in the course of promoting the competing magazine, the Defendants made false statements to contractors who were potential advertisers in either or both magazines:

• In a July 5, 2018 email, the Defendants informed the contractors that GDHI had not mailed out its June 2018 issue because GDHI had not paid the post office for that mailing. The Defendants encouraged the contractors not to advertise with GDHI unless GDHI produced a verified proof of mailing. GDHI states that these assertions were false and that the June 2018 went out as scheduled and postage was paid in full for it.

• In an August 31, 2018 email to contractors, the Defendants promoted their competing magazine, stating that unlike "our competitors" – which GDHI understands to be referring specifically to it – the Defendants "do not saturate zipcodes" and "handpick every single home that receives" their magazine. GDHI contends that, contrary to the Defendants' implication, it carefully selects which households receive its magazines. It also contends that, contrary to the Defendants' assertions, the Defendants do not "handpick" which households receive the Defendants' magazine, in that both GDHI and the Defendants purchase their initial mailing list from the same source.

• That at unspecified times (although occurring "well over 1,000 [times] this year alone"), the Defendants sent contractors a "media kit" that states: (i) the average household receiving the Defendants' magazine has an "average net worth" of $1.73 million, and (ii) that "72% of our readers frequently purchase products or services from ads seen" in the magazine. GDHI does not assert that the "net worth" statement is factually untrue, but notes that the Defendants selected "average" net worth because "it is deceptively inflated by a few ultra-rich individuals" that receive the Defendants' magazine. It contends that the "72%" statement is false because, in fact, both GDHI and the Defendants' magazines have "direct response rates per issue of far less than 1% per advertiser."

Based on these facts, GDHI asserts numerous claims sounding in monopolization in violation of the Sherman Act, 15 U.S.C. § 2 *et seq.*; unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.*, tortious interference with contractual relations that GDHI had with contractors

already advertising with it, and defamation (the latter two presumably asserted under Colorado law).

GDHI filed the instant Motion for Preliminary Injunction **(# 46)**, requesting that the Court enjoin the Defendants from: (i) "making the [ ] false and/or deceptive statements discussed herein" about GDHI or themselves; and (ii) "declaring these statements to be false or deceptive." The only evidentiary material supporting GDHI's motion is an affidavit from Greg Harline, GDHI's owner. Most of Mr. Harline's affidavit discusses his business history and the business losses he claims to have suffered as a result of the Defendants' actions; as to the facts recited above, Mr. Harline sweeps them all up into a single assertion that "I have reviewed the Amended Complaint and the Motion for Preliminary Injunction and Declaratory Relief and to the best of my knowledge, the facts about me, my business[ ], and my industry are accurate."

Shortly after filing the injunction motion, GDHI filed the instant Motion to Expedite **(#49)**. In that motion – which is not supported by any additional evidentiary material – GDHI states that: (i) it has lost and continues losing customers because of the Defendants' deceptive statements, (ii) that GDHI intends to rename its magazine beginning with the March 4, 2019 issue "in an effort to mitigate its damages" (followed by another issue on April 1, 2019), and (iii) that if the Defendants are not restrained, GDHI will suffer continued losses and put it out of business "within a matter of months." GDHI states that "the harm [to it] that will likely ensue prior to the March 4 and April 1, 2019 issues" warrant expedited briefing and determination of the injunction motion.

To obtain a preliminary injunction, GDHI has the burden of showing: (i) that it is substantially likely to succeed on the merits; (ii) that it is likely to suffer an irreparable injury if the injunction is not granted; (iii) that the balance of harms tips in favor of the movant; and (iv)

that the requested injunction is not adverse to the public interest. Certain types of injunctions, including those that request mandatory or conclusive relief – such as GDHI's request for an immediate declaration that the statements it identifies are "deceptive" – are disfavored, and thus require the movant to make a "strong" showing as to the likelihood of success and balance of harm elements. *Fish v. Kobach*, 840 F.3d 710, 723-24 (10th Cir. 2016). Although there are no hard and fast rules that govern the Court's consideration of a motion to expedite, it is generally appropriate for the Court to expedite the briefing and determination of a matter where the party requesting expedited relief can show that it would suffer undue harm in the interim if normal periods of time for briefing and determination are observed.

## II. Jurisdiction

The Court exercises jurisdiction in this matter pursuant to 28 U.S.C. §1331.

## III. Analysis

Here, the Court need not reach the question of expedition, as the Court finds that GDHI's substantive injunction motion, on its face, fails to demonstrate that GDHI could establish facts necessary to obtain the requested injunction. In doing so, the Court discards that portion of GDHI's request that seeks a conclusive determination that the statements it challenges by the Defendant are, as a matter of law, deceptive because such request seeks final relief for which GDHI has made an inadequate showing. Even under the lesser standard applicable to the requested prohibitory, *status quo* injunction, GDHI's showings are insufficient.

### 1. Irreparable harm

The Court begins with the question of whether GDHI has made a *prima facie* showing that it will suffer an irreparable injury if the Court does not enjoin the Defendants from continuing to make the statements described above. To be "irreparable," a contemplated injury

4

must have several characteristics: (i) it must be actual and certain, not simply theoretical, (ii) it must be imminent, such that there is a clear need to act to prevent the harm from occurring, and (iii) the harm cannot be remedied with an award of money damages. *Heideman v. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Here, the Court can assume, without necessarily finding, that the injuries that GDHI claims to be suffering – the loss of contractors advertising in its magazines –are difficult to quantify, thus rendering GDHI's injury suitably "irreparable." *See e.g. Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1012 (10th Cir. 2018). But GDHI has not made a *prima facie* showing that its contemplated injury – the loss of significant numbers of customers due to the Defendants' misleading advertising – is either certain, imminent, or causally-related to the Defendants' alleged statements.

The Court begins with problems of certainty and imminence. GDHI does not come forward with any facts that suggest that the Defendants have repeated, much less will repeat in the future, the challenged portions of their July and August 2018 emails.[3] Thus, there is no showing that GDHI is certainly and imminently going to suffer a future loss relating to those statements. GDHI's injunction motion contends that the Defendants have circulated more than a thousand media kits "this year" – the Court assumes 2019 – that also contain false statements. Although the Court has profound doubt that Mr. Harline's cursory affidavit is enough to support that representation with evidence, the Court will assume that it is. It may be fair to infer that if the Defendants have actively circulated numerous media kits already in 2019, they will continue to do so. Thus, the most that GDHI has shown in its motion is that the Defendants are likely to

---

[3] GDHI seems to assume that, because the Defendants' counsel refused to stipulate that the Defendants would not make such statements in the future, this suffices to demonstrate a likelihood that the Defendants will do so. The Court rejects this contention.

5

continue making the two allegedly-false representations in the media kit. The Court's remaining analysis will consider only these two statements.

A showing of irreparable harm also requires a demonstration that the act sought to be enjoined is causally-connected to the injury the movant believes is imminent; otherwise, the injunction would be ineffective at preventing the harm. Here, GDHI offers no evidence to suggest that it can prove that its recent loss of customers – Mr. Harline's affidavit estimates that he has lost $20,000 in revenue from contractors he has lost as advertisers since the Defendants began publishing their competing magazine in July 2018 – was caused by the Defendants' misstatements. GDHI has not proffered any evidence from its former customers who might attest to the fact that they chose to cease advertising with GDHI after hearing any of the cited statements. *Compare Century Martial Arts Supply Inc. v. National Assn. of Professional Martial Artists*, 129 Fed.Appx. 421, 427 (10th Cir. 2005) (affirming jury verdict on somewhat similar facts, finding that customer's testimony about electing not to do business with plaintiff after defendant published misleading comparisons between the two businesses sufficed to demonstrate causation and damages). Mr. Harline's affidavit offers only an oblique suggestion that he has contractors "tell me things they have heard about my business that are not true," but it is difficult to know whether this vague reference refers to the challenged statements themselves or some other untrue assertions he has heard about GDHI. It is unclear whether the untrue assertions that the contractors heard were those made by the Defendants, and if so, the fact that the contractors knew that the statements were untrue suggests that they did not rely upon them in any way, particularly by discontinuing business with GDHI. Even if GDHI is correct that it has lost substantial customers since July 2018, nothing in the record indicates that GDHI can show that those losses result from the challenged <u>statements</u> by the Defendants, as opposed to, say, the

mere fact that the Defendants are publishing a competing magazine. Without some ability to show that the statements themselves are the cause of the anticipated loss of future customers, GDHI will be unable to demonstrate the irreparable injury element.

### 2. Likelihood of success

It is axiomatic that a party seeking a preliminary injunction must show that it is likely to succeed on one or more claims that, if proven at trial, would support an aware of final injunctive relief in the same form as that which is sought provisionally. Here, only GDHI's unfair competition and state-law claims (*e.g.* tortious interference with contract, defamation) would, if proven, permit the Court to enjoin the Defendants from continuing to make the challenged statements, and thus, the Court need only assess GDHI's likelihood of succeeding on these claims. The Court need not extensively recite the elements of each claim separately; it is enough to assert that all of GDHI's claims of this type require it to show that the Defendants: (i) made a misleading statement of fact, (ii) that caused contractors to choose not to do business with GDHI. *See e.g. Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (Lanham Act claim elements); *Memorial Gardens, Inc. v. Olympian Sales & Mgmt Consultants, Inc.*, 690 P.2d 207, 210-11 (Colo. 1984) (tortious interference elements).[4] The Court has already addressed its concerns about GDHI's failure to make a *prima facie* showing that the Defendants' false statements were the cause of contractors refusing to do further business with GDHI, and those concerns continue to apply here.

---

[4] An essential requirement of a tortious interference claim against a competitor is that the contract in question was not terminable at-will. *Id.* Notably, GDHI never describes the nature of the particular advertising contracts it had with its contractors, much less whether the contractors could terminate those contracts at-will.

7

But the Court also has concerns that some of the statements that GDHI relies upon would not be actionable as material misstatements. For example, GDHI takes issue with statements in the Defendants' media kits that contend that the average net worth of a reader of the Defendants' magazine is $1.73 million. GDHI contends that this statement is misleading because a small number of statistical outliers – high net-worth readers – artificially raise that average. Presumably, GDHI would prefer that the Defendants advertise the median net worth of their readership, so as to eliminate such outlier effects. But the Court does not understand GDHI to contend that the Defendants' "average" statement is factually incorrect. (Certainly, Mr. Harline's affidavit makes no effort to address that issue in any detail.) Although unfair competition claims can be brought based on advertising statements that are literally true but nevertheless misleading, in such circumstances, proof of how the consumers receiving those advertisements understood the statements becomes necessary. *Avis Rent A Car System, Inc. v. Hertz Corp.*, 782 F.2d 381, 386 (2d Cir. 1986). GHDI has not indicated that it is prepared to make a showing as to how contractors understood the Defendants' "average net worth" statement.

That leaves only the "72%" statement – that "72% of [the Defendants'] readers frequently purchase products or services from ads seen" in the Defendants' magazine. According to GDHI (but not Mr. Harline's affidavit), "within the broader direct mail industry, purchase rates approaching 4% are considered spectacular" and that both GDHI and the Defendants experience "direct response rates per issue of far less than 1% per advertiser." GDHI argues that it "can directly track the phone calls received in response to each advertiser" in its own magazine, and that "presumably [the Defendants] can do the same." GDHI's argument on this point suffers from several problems. It equates the Defendants' statement that reader

"frequently purchase products or services from ads seen" with concepts described variously as "purchase rates" or "direct response rates," when it is not at all clear to the Court that these statements all share a common meaning. It seems to conflate response rates for "the broader direct mail industry" – the composition and characteristics of which is unknown – with response rates for the particular magazines at issue here. And it "presume[s]" that the Defendants track response rates the same way that GDHI does, without even Mr. Harline claiming to have any actual knowledge that the Defendants do so. Given these various concerns, and the burden that a party seeking preliminary injunctive relief faces, the Court finds that GDHI has not made a *prima facie* showing that it is likely to succeed on the merits of its claims, such that further consideration of its injunction motion is warranted.

Accordingly, the Court finds it appropriate to deny GDHI's injunction motion without prejudice. GDHI may, of course, file a new motion that more fully articulates the factual basis for its claims (including the imminence of the harm sought to be prevented) and the evidence it can adduce to support those claims. But on the record currently before the Court, GDHI has not made a *prima facie* showing that would warrant further evaluation of the motion or an evidentiary hearing. Accordingly, GDHI's Motion for Preliminary Injunction **(# 46)** is **DENIED** without prejudice. GDHI's Motion to Expedite **(# 48)** and THM's Motion for Joinder **(# 51)** are **DENIED AS MOOT**.

Dated this 22nd day of February, 2019.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge