# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02672-MSK-NRN

GDHI MARKETING, LLC D/B/A GODABO HOME AND LIFE,

     Plaintiff,

v.

ANTSEL MARKETING, LLC D/B/A THEHOMEMAG FRONT RANGE,
THM MANAGEMENT, LLC D/B/A THEHOMEMAG,
THE HOME MAG HOLDING COMPANY, LLC,
CAMPBELL WIENER, INC. D/B/A THM OF VENTURA,
THE HOME IMPROVER, LLC,
CLAIRE LINDSAY,
ANNIE MULLEN,
BARBARA ROBLES,
ELLEN SMITH,

     Defendants.

---

## PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS THM MANAGEMENT, LLC, THE HOME MAG HOLDING COMPANY, LLC, CAMPBELL WEINER, INC., AND THE HOME IMPROVER, LLC'S MOTIONS TO DISMISS FIRST AMENDED COMPLAINT [ECF NOS. 38, 39, 40, 41]

---

Plaintiff GDHI Marketing, LLC d/b/a GoDabo Home & Life ("GoDabo"), opposes the relief requested in Defendants THM Management, LLC d/b/a TheHomeMag ("THM, LLC"), The Home Mag Holding Company, LLC ("THM Holding"), Campbell Weiner, Inc. ("THM of Ventura"), and The Home Improver, LLC's ("The Home Improver") (collectively referred to as the "Campbell Defendants") Motions to Dismiss GoDabo's First Amended Complaint and for the reasons set forth below requests that this Court deny the Motions to Dismiss in full.[1]

---

[1] There is significant overlap and no conflicts among the arguments made by the separate Campbell Defendants in their respective Motions to Dismiss. To the extent that claims are also common between the Campbell Defendants and the remaining defendants whose motions are addressed under separate cover, GoDabo incorporates those arguments here.

# I. INTRODUCTION

This Response addresses the four Motions to Dismiss filed by the Campbell Defendants, which together control a national company-owned, affiliate-owned and franchise system for direct mail home improvement advertising magazines operating under the TheHomeMag mark. Am. Compl. (ECF no. 21) ¶¶ 1, 17. THM, LLC is the franchisor entity,[2] while THM Holding owns TheHomeMag intellectual property, and trademarks and licenses the same to its franchisees and its company-owned businesses. *Id.* ¶¶ 3-4. THM Holding also operates ten company-owned businesses of the type THM, LLC franchises, operating under the TheHomeMag mark. *Id.* ¶ 4. THM of Ventura and The Home Improver together own several businesses of the type THM, LLC franchises. *Id.* ¶¶ 5–6. These four entities share a principal, Sean Campbell. Ex. A (Franchise Disclosure Document) at 1.[3]

Nationwide, the Campbell Defendants have monopoly power in the market for direct mail home improvement advertising magazines. Throughout their national network of magazines that constitute this monopoly, the Campbell Defendants have eliminated horizontal competition among company-owned, affiliate-owned, and franchisee-owned magazines by intentionally carving up the national geographic market into separate "protected" territories for each of their magazines. Am. Compl. ¶ 43. This means that neither THM Ventura's magazines, THI's magazines, THM Holdings' magazines, nor franchisees magazines are allowed to market in one-another's allocated

---

[2] THM Management, LLC, referred to herein as "THM, LLC," is referred to throughout the Amended Complaint as "THM Franchisor" or "THM Management."

[3] *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). Documents authenticated by Affidavit of Greg Harline, *attached hereto* at Exhibit E.

territories. Ex. A at 31. In addition, the Campbell Defendants created and utilized a central advertising and marketing platform for each such magazine that publishes knowingly false and deceptive statements about TheHomeMag and its franchisees in order to erect substantial barriers to entry by competitors into any of these "protected" territories. Am. Compl. ¶¶ 40, 44. As a result of this concerted action, the Campbell Defendants have created and maintained a monopoly of direct mail home improvement advertising magazines nationwide, which allows them to extract monopolistic rents, decrease selection for consumers, and reduce or eliminate competition. *Id*. ¶¶ 44, 65.



**Figure 1: Illustration of all Campbell Defendants' participation in the same horizontal market.**

In addition to the franchises owned by the Campbell Defendants, several independently owned TheHomeMag franchises operate nationwide in their own "protected markets." *Id.* ¶ 18; Ex. A at 35. One of those is TheHomeMag Front Range, which is operated by Defendant Antsel Marketing, LLC. Am. Compl. ¶ 7. TheHomeMag Front Range operates in the Denver Metropolitan

Area and, until 2018, held—by its own admission—a 100% share of the direct mail home improvement advertising magazine market in the Denver Metro Area. *Id.* ¶ 61. Antsel Marketing, LLC as a franchisee maintains its monopoly through assistance from the Campbell Defendants including the latter's system of price fixing, exclusive suppliers, coordinated false advertising, and confidential operations guidance, in addition to its "protected" territory. *Id.* ¶ 43; Ex. A at 9, 13, 20, 23–24.

GoDabo is the only competitor of TheHomeMag Front Range for direct mail home improvement advertising magazines in the Denver Metropolitan Area. Am. Compl. ¶¶ 53, 63. Since entering the market in early 2018, GoDabo has struggled to attract and hold advertising customers despite the fact that it offers a superior product at a more attractive price than TheHomeMag. *Id.* ¶¶ 1, 25, 40, 63, 65. GoDabo, as with any entrant to this product market, faced steep barriers to entry, including the need to finance and sustain large capital expenditures and marshal significant technical know-how to open and maintain its operation. *Id.* ¶¶ 20, 55; Ex. A at 11–12. In addition, and most significantly, false and deceptive statements made by agents of TheHomeMag Front Range, such as impossible-to-attain performance promises and wholly false demographic data, have created a virtually insurmountable barrier to entry because it necessarily forces GoDabo to either lie to compete with TheHomeMag Front Range, or concede that its product is inferior when it is not. Am. Compl. ¶¶ 37–42.

These statements are in direct connection to and a result of a conspiracy with the Campbell Defendants to monopolize the Denver market as well as the national market. *Id.* ¶¶ 13, 78–84. This conspiracy is both directly established by written agreements between the Defendant, and can be inferred based on the benefits received by the Campbell entities, which receive a franchise fee and ongoing royalties, and the franchises and company-owned and affiliate-own businesses that get to

charge a monopolistic price for their product. *Id.* ¶ 44. Additional details of this conspiracy are explicitly described in Defendants' own Franchise Disclosure Document. Ex. A; Am. Compl. ¶ 43.

As one pronounced example of this anticompetitive conduct, in August 2018, as GoDabo was approaching a 20% market share, Antsel Marketing, LLC and several of its agents conspired to send a disparaging email about GoDabo to a large list of their shared clients and others, resulting in confirmed loss of advertising customers to GoDabo. Am. Compl. ¶¶ 23–32. When notified of this, THM, LLC assumed responsibility for assuring that these actions did not continue. *Id.* ¶ 33. Yet, similarly false and disparaging statements have continued. *Id.* ¶¶ 34–38. Furthermore, the media kit that TheHomeMag Front Range distributes to consumers contains several of these false and deceptive statements and was designed in conjunction and coordination with the Campbell Defendants. *Id.* ¶¶ 37–38; Ex. A at 12.

In order to address this anticompetitive landscape that harms GoDabo as well as the home improvement advertising contractors in both Denver and the National Market who must pay higher prices for lower-quality products (and also their customers to whom they pass on those costs), GoDabo filed claims against the Campbell Defendants pursuant to the Sherman Act §§ 1 and 2 and the Lanham Act § 43(a), as well as related claims against another set of Defendants that operate TheHomeMag Front Range (referred to herein collectively as the "Front Range Defendants"). "The fundamental purpose of the Sherman Act was to secure equality of opportunity and to protect the public against evils commonly incident to destruction of competition through monopolies and combinations in restraint of trade." *Ramsay Co. v. Associated Bill Posters of U. S. and Canada*, 260 U.S. 501, 512 (1923). "When competition is reduced, prices increase and unit sales decrease." *Burke v. Ford*, 389 U.S. 320, 322 (1967).

GoDabo's First Amended Complaint included over twenty pages of detailed and plausible factual allegations which, if true, support its claims.[4] Nevertheless, Campbell Defendants assert that it has failed to meet the plausibility standard under *Iqbal* and *Twombly* arguing with flawed logic, *inter alia*, that (1) Campbell Defendants are not competitors *because* they operate in "protected" territories, despite the fact that this is the very definition of market allocation; (2) the statements in the TheHomeMag Front Range's media kit and its agents' emails were not false or misleading despite the clear questions of fact that this assertion raises; that (3) GoDabo did not plead any direct evidence of anti-competitive or conspiratorial conduct by certain Campbell Defendants, despite the well-recognized ability to prove conspiracy through circumstantial evidence, as well as GoDabo's direct allegations of a specific conspiracy and the direct evidence of a conspiracy inherent in the franchise disclosure document; (4) GoDabo failed to assert facts supporting certain elements such as market definition and injury, which is plainly contradicted by even a cursory reading of the Amended Complaint; and (5) GoDabo failed to establish a *prima facie* showing of this Court's personal jurisdiction over three of the Campbell Defendants, even though it is their burden in this case to prove that this Court's exercise of jurisdiction would infringe on their constitutional and liberty interests.

Each of GoDabo's challenged claims is supported below in this Court's required format. As the Court has recognized, "[t]here is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6)." *Shell v. Am. Family Rights Ass'n*, No. 09CV00309-MSK-KMT, 2010 WL 1348548, at *14 (D. Colo. Mar. 31, 2010) (attached hereto as Exhibit F) (citing *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir.1999)). "[T]he Court must take Plaintiffs'

---

[4] This Response addresses any concern that the Amended Complaint is a "shotgun pleading" by connecting the factual allegations in the Amended Complaint directly to the claims asserted.

factual allegations as true, consider them as a whole, and view them in the light most favorable to Plaintiffs in evaluating a motion to dismiss . . . ." *Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1079 (D. Colo. 2016). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (alteration in the original). GoDabo pleads a detailed and plausible factual foundation in support of its claims that is more than sufficient at this stage and this Court should deny the Motions to Dismiss.[5]

## II. ARGUMENT

### A. GoDabo Pleads Sufficient Facts to Support Its Third Claim For Relief: Violation of 15 U.S.C. § 2 – Conspiracy to Monopolize (Denver Market) – Against THM, LLC and THM Holding

<u>Burden of Proof</u>: GoDabo agrees that it has the burden of proof for this claim.

<u>Elements</u>: GoDabo agrees that a conspiracy to monopolize claim requires proof of (1) the existence of a combination or conspiracy to monopolize; (2) overt acts done in furtherance of the combination or conspiracy; and (3) a specific intent to monopolize. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1231 (10th Cir. 2017). Some cases also list a fourth element: an effect upon an appreciable amount of interstate commerce. *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1028 (10th Cir. 2002). Campbell Defendants' cited cases do not support their assertion that a conspiracy to monopolize claim contains the element of "anticompetitive conduct," as discussed further below. GoDabo agrees that its Section 2 monopoly claims require proof of the relevant product and geographic market.

---

[5] Additional relevant facts alleged in the Amended Complaint or contained in the TheHomeMag franchise disclosure document are addressed below as relevant to each of the claims.

<u>Elements at Issue</u>:

### 1. *Anticompetitive Conduct*

THM, LLC and THM Holding challenge this element and argue that false advertising does not constitute anticompetitive behavior under the Sherman Act.

First, THM, LLC and THM Holding do not provide any authority for their position that "anticompetitive conduct" is an element of a conspiracy to monopolize claim. *Cf. Lantec*, 306 F.3d at 1028 (10th Cir. 2002) (listing only four elements); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.,* 762 F.3d 1114, 1127 (10th Cir. 2014) (discussing this element in the context of an *attempted* monopolization claim). *Cf. Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 916 (2d Cir. 1988) (same). Nevertheless, GoDabo sufficiently alleges anticompetitive conduct.

Although false statements about a competitor ("trade disparagement") are presumed not to constitute an antitrust injury, this presumption is overcome by "a demonstration that a competitor's false advertisements had the potential to eliminate, or did in fact eliminate, competition . . . ." *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 895 (5th Cir. 2016). *Cf. Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 100 (5th Cir. 1988) ("Advertising that creates barriers to entry in a market constitutes predatory behavior of the type the antitrust laws are designed to prevent."). The Tenth Circuit adopted the six-factor test to determine whether the presumption is overcome from other circuits:

> A Section 2 plaintiff may rebut this presumption by satisfying a six-factor test, showing that the disparagement was: (1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible to neutralization or other offset by rivals.

*Lenox*, 762 F.3d at 1127.

GoDabo sufficiently alleges facts meeting this test. Am. Compl. ¶¶ 21–42. Included within these allegations, *id.* ¶¶ 24, 35–37, are plausible assertion that the statements contained in the July and August emails and the TheHomeMag Front Range media kit are false because, among other things:

- The June 2018 GoDabo issue was already in the mail when the Front Range Defendants stated on July 5, 2018, that "GoDabo has not yet mailed the issue."

- The postage for said issue was paid on June 26, 2018, when the Front Range Defendants stated on July 5, 2018, that "he [Greg Harline of GoDabo] has not paid the Post Office."

- TheHomeMag Front Range's mailing list is not "handpicked," despite the claim in the August 31, 2018, email.

- GoDabo does not "saturate zipcodes," despite the claim in the August 31, 2018, email to the contrary.

- The average net worth of TheHomeMag Front Range reader is not $1.73 million, despite the claim to the contrary in the media kit.

- 72% of the TheHomeMag readers do not frequently purchase products or services from ads in TheHomeMag, despite the claim in the media kit.

In addition, GoDabo alleges that the statements are material because they *actually* influenced buying decisions for prospective home improvement contractor advertisers, *id.* ¶¶ 25–32, 41; that they were likely to induce reasonable reliance because they were made by the sole established participant in the market, *id.* ¶ 41; that they were made to home improvement contractors who are largely not specialists in the advertising industry, *id.*; that the statements against GoDabo had continued since at least April 2018 and the false claims about TheHomeMag generally have continued for years, *id.* ¶¶ 21, 42; and that the campaign is not readily susceptible

to neutralization by GoDabo as the recent entrant to the market, when those statements are made by an established participant, *id.* ¶ 42.[6] Moreover, GoDabo's pleadings demonstrate that these false and/or misleading statements have the very real potential to eliminate GoDabo as a competitor in the market. *Id.* ¶¶ 1, 21, 25, 47, 65.

### 2. *Combination or Conspiracy*

THM, LLC and THM Holding challenge this element on the basis that they and the Front Range Defendants are not competitors and, therefore, cannot conspire as a matter of law.

Despite the Campbell Defendants' arguments to the contrary, *Copperweld* does not foreclose the possibility that a franchisor and franchisee may conspire. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) (holding only that a wholly-owned subsidiary and its parent corporation could not conspire for purposes of the Sherman Act § 1). Later, the Supreme Court held that licensing activities for individual professional football teams' intellectual property, conducted through a corporation separate from the teams/franchisees and with its own management, constituted concerted action that was not categorically beyond the coverage of § 1 of the Sherman Act. *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183 (2010). The key to *American Needle* was that the entities had distinct economic interests. *Id.* at 195.

GoDabo has sufficiently alleged facts supporting THM, LLC and THM Holding are, in fact, separate economic actors with distinct economic interests from each other and from the Front Range Defendants and are therefore capable of conspiring. Am. Compl. ¶¶ 78-84. For example:

- The ownership of THM, LLC and THM Holding differ from the ownership of Antsel Marketing, LLC. *Id.* ¶ 7; Ex. A at 1.

---

[6] As compared to its burden on a motion for preliminary injunction, GoDabo at this stage needs only to set forth the plausible allegation that such contractors exist and were misled to overcome the Motions to Dismiss.

- THM, LLC has an economic interest in the success of the national franchise system (including TheHomeMag Front Range), because it is paid a franchise fee calculated as a percentage of its franchises overall revenues. Am. Compl. ¶ 79.

- THM Holding, on the other hand, had an independent interest in the creation and maintenance of monopoly power within each "protected" territory (including the Denver Market by THM Front Range) because it held an interest in the value of TheHomeMag mark, as well as operated numerous separate magazines under TheHomeMag mark. *Id.* ¶ 80.

- The individual owners and employees of Antsel Marketing, LLC have separate financial interests as well as their interests are in the profitability of their particular franchise in the Denver market only. *Id.* ¶¶ 81–84.

On the other hand, if this Court concluded that THM, LLC and THM Holding are incapable of conspiring with the Front Range Defendants, GoDabo will seek leave to amend its Complaint and add these Defendants to the § 2 monopolization claims pertaining to the Denver Market under the Tenth Circuit's analysis in *Lenox* wherein the Circuit Court concluded that entities that are subject to a *Copperweld* defense and unable to be held liable under a conspiracy claim may nevertheless be liable for § 2 monopolization or attempted monopolization claims under a single enterprise theory. *Lenox*, 847 F.3d at 1235. Moreover, a plaintiff need not prove that each affiliated defendant independently satisfies every element of the claims in order to be held liable, but rather the aggregate conduct must be scrutinized. *Id.* at 1236.

### 3. *Overt Acts*

THM, LLC and THM Holding challenge this element on the basis that the Complaint fails to allege specific acts demonstrating participation in a conspiracy.

"A plaintiff can prove a conspiracy with either direct or circumstantial evidence." *Lantec*, 306 F.3d at 1028 (citing *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10 (1946)). "A plaintiff must offer evidence tending to exclude the possibility that the alleged conspirators either acted independently or colluded in a way that could not have harmed the plaintiff." *Id.*

GoDabo has sufficiently alleged facts supporting a direct and circumstantial inference that THM, LLC, THM Holding, and the Front Range Defendants engaged in a conspiracy. Am. Compl. ¶¶ 17–18, 21–23, 34–45. In particular, the Franchise Agreement is a written contract between each THM franchisee and THM, LLC that creates barriers to entry to preserve the local area monopoly of TheHomeMag franchisee (and the other TheHomeMag businesses in their own "protected" markets"). Ex. A at 97. This coordination is evidenced by the allegation that THM, LLC assumed responsibility for the statements made by its franchisee, TheHomeMag Front Range. Am. Compl. ¶¶ 33, 45.

Moreover, The Media Kit, which GoDabo plausibly pleads contains false and deceptive information, is also produced with assistance from THM, LLC and THM Holding. *Id.* ¶¶ 37–38; Ex. A at 12. Moreover, the structure of the Campbell Defendants' businesses implies a plan to conspire to monopolize each territory in which a company-owned, affiliate-owned, and franchised businesses operate through, among other things, allocating the market into "protected" territories and its system of price fixing, exclusive suppliers, advertising approval, and confidential operations guidance. Am. Compl. ¶ 43; Ex. A at 9, 13, 20, 23–24.

Thus, "Plaintiffs' allegations include facts that suggest a conscious commitment to a common scheme designed to achieve an unlawful objective." *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 80 F. Supp. 3d 1257, 1264 (D. Colo. 2015) (internal citation and quotation

marks omitted). Accordingly, here GoDabo has alleged that the Campbell Defendants engaged in overt acts in support of the conspiracy sufficiently to overcome the Motions to Dismiss.

### 4. *Proof of Market*

THM, LLC and THM Holding challenge this element on the basis that GoDabo too narrowly defines its product market and fails to define the market "with reference to the rule of reasonable interchangeability and cross-elasticity of demand."

"Defining the relevant market for purposes of antitrust analysis requires the plaintiffs to define both a product market and a geographic market." *Christou v. Beatport, LLC*, 849 F. Supp. 2d 1055, 1064 (D. Colo. 2012). "The plaintiff must define the relevant market by making specific reference to "the reasonable interchangeability of use or the cross-elasticity of demand between the product and substitutes for it." *Id.* (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). "[B]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Id.* at 1066 (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 199–200 (2d Cir. 2001)) *accord Lenox,* 762 F.3d at 1120 ("The differing definitions create a fact question on the product market, precluding summary judgment.").

GoDabo has sufficiently alleged facts supporting its Denver Market definition. GoDabo defines the product market as "targeted direct-mail home-improvement advertising magazine[s]." Am. Compl. ¶ 16. GoDabo provides detailed and plausible factual support for this assertion. *Id.* ¶¶ 49–55. This includes the fact of differentiation from other local print advertisements, *id.* ¶ 50; the fact that specialized vendors are present within the product market, *id.* ¶ 51; the fact that Defendants' own franchise disclosure document defines the relevant market as the "home improvement advertising magazine…line of business," *id.* ¶ 52; the fact that TheHomeMag's activities specifically target GoDabo as the only competitor within the relevant market, *id.* ¶ 53;

the differences in type, grade, distribution, audience, and qualify of the product form other forms of advertising, *id.* ¶ 54; and the high barriers to entry, *id.* ¶ 55. GoDabo also plead specific facts regarding the reasonable interchangeability or cross-elasticity of the demand between the product and its substitutes. *Id.* ¶¶ 50, 54.

GoDabo defines the <u>geographic</u> market as the seven county Denver Metropolitan Statistical Area, and as support for that definition asserts that "there is a high cross-elasticity of demand by consumers within this area for purchase of home improvement services, whereas there is a very low cross-elasticity of demand for consumers located outside this area." ¶ 56; *see also* ¶ 57–59 (supporting claims for Denver geographic market).

**B.** **GoDabo Pleads Sufficient Facts To State Its Fourth Claim for Relief: Violation of 15 U.S.C. § 1 per se *(or, in the alternative, quick look) – Market Allocation (National Market) - Against THM, LLC, THM Holding, The Home Improver, and THM of Ventura***

<u>Burden of Proof</u>: GoDabo agrees that it has the burden of proof on its *per se* claim, but adds the following clarification: if GoDabo proves that Defendants' conduct falls within a *per se* category, it is not necessary for GoDabo to prove that the conduct resulted in an unreasonable restraint on trade, nor is it necessary to even define the relevant market. *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1392 (10th Cir.1992). Alternatively, under an abbreviated, "quick look" rule-of-reason analysis, GoDabo must show that "the conduct at issue amounts to a 'naked' and effective restraint on price or output that carries 'obvious" anticompetitive consequences.'" *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1311 (10th Cir. 2017) (citations omitted). Then, "the burden in effect immediately shifts to the defendant to demonstrate countervailing procompetitive effects." *Id.*

<u>Elements</u>: GoDabo agrees that the Campbell Defendants provide an accurate statement of the law regarding a *per se* Section 1 violation. However, GoDabo notes that "[a] horizontal

conspiracy occurs when competitors at the same market level agree to restrain trade on either their own or another market level." *See Business Elecs. Corp. v. Sharpe Elecs. Corp.*, 485 U.S. 717, 730 (1988); *accord Beal Corp. Liquidating Tr. v. Valleylab, Inc.*, 927 F. Supp. 1350, 1366 (D. Colo. 1996) ("To establish a violation, Beacon must show that Valleylab and Birtcher entered into an agreement with each other to allocate the relevant market."). GoDabo alternatively pleads a "Quick Look" theory of a Section 1 violation. Courts use a quick-look analysis when "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question could have an anticompetitive effect on customers and markets." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17CV205-MMA-MDD, 2018 WL 3032552, at *17 (S.D. Cal. June 19, 2018) (attached hereto as Exhibit G) (citing *Cal. Dental*, 526 U.S. at 770).

Elements at Issue:

### 1. National Market Definition

All Campbell Defendants appear to challenge this element.

As stated above, a market definition not required for a *per se* claim. Nevertheless, GoDabo has defined the relevant market sufficient to withstand a motion to dismiss. A market definition must include a product market and geographic market, and a plaintiff must also make specific reference to the reasonable interchangeability of use or cross-elasticity of demand between the product and its substitutes.

GoDabo has plead sufficient facts at this stage of the case to establish its National Market definition. GoDabo defines the product market as "targeted direct-mail home-improvement advertising magazine[s]." Am. Compl. ¶ 16. The analysis from the previous section, concerning product definition, applies here in full, but Defendants have not suggested that GoDabo has defined

too broadly or narrowly, but instead argue that a national market does not exist. Their own franchise system facially contradicts this argument.

GoDabo defines the National Market geographically as "the entirety of the United States, and is an amalgamation of all metropolitan areas with sufficient demographics to support businesses operating in the Product Market." *Id.* ¶ 60. More specifically, GoDabo asserts that "TheHomeMag offers defined franchise territories for its franchisees because it is understood in the industry, and specifically by Defendants, that the appropriate geographic markets for its product is correctly broken down into metropolitan areas, such as the Denver metropolitan area," *id.* ¶ 59, and further that "several such metropolitan areas (e.g., Los Angeles) have been artificially divided into separate "protected territories," *id.* ¶ 60. *Accord Charles A. Ramsay Co. v. Associated Bill Posters of U.S. & Canada*, 260 U.S. 501, 510 (1923) (holding that an association of billposters that entered into a combination and conspiracy to monopolize the business in their respective localities and to dominate and control all trade and commerce in posters within such limits was nevertheless nationwide.).

This is far beyond "a cursory mention of a relevant product and geographic market." *Cf. Total Renal Care, Inc. v. Western Nephrology and Metabolic Bone Disease, P.C.*, 2009 WL 2596493 at *7 (D. Colo. Aug. 21, 2009) (attached hereto as Exhibit H). GoDabo met its minimal burden to plead facts demonstrating this element. *See Christou*, 849 F. Supp. 2d at 1066 ("This Court agrees with the sentiment of the Second Circuit, as well as other circuits, that '[b]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market.'").

## 2. Horizontal Relationship

All Campbell Defendants challenge this element on the grounds that the Campbell Defendants do not all compete at the same market level and therefore cannot be liable for a *per se* violation based on a horizontal market constraint.

"[A]n agreement to allocate or divide customers between competitors within the same horizontal market, constitutes a per se violation of § 1 of the Sherman Act." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990). This type of horizontal market division is precisely what the Supreme Court has singled out for *per se* treatment. In *United States v. Topco Associates, Inc.* the Federal government brought an action against a cooperative association of supermarket chains that had divided its member firms into exclusive marketing territories in which each could sell Topco-branded products, in exchange for the agreement not to sell Topco-branded products outside of its area, which the Court found to be a *per se* violation. 405 U.S. 596 (1972). Similarly, in *United States v. Sealy*, the Federal government brought an action against Sealy, which had agreed with its licensees (manufacturers of mattresses and bedding with the Sealy mark) not to license other manufacturers or sellers to sell Sealy-brand products in a designated territory in exchange for the promise of the licensee who sold in that territory not to expand its sales beyond the area demarcated by Sealy. 388 U.S. 350 (1967). In a more recent example the United States District Court for the Northern District of Illinois concluded that a written franchise agreement requiring McDonald's franchisees to agree not to hire employees from other McDonald's restaurants—despite being "spearheaded by the entity at the top of the chain" and having "vertical elements"—was nonetheless a horizontal restraint and properly subject to *per se* analysis. *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2018 WL 3105955, at *6 (N.D. Ill. June 25, 2018) (attached hereto as Exhibit I).

GoDabo has sufficiently alleged facts supporting horizontal market allocation. *See also*, **Figure 1**, *supra* at p.3. GoDabo alleged that THM, LLC franchises TheHomeMag to at least 39 franchisees. Am. Compl. ¶¶ 3, 18. GoDabo also alleges that THM Holding directly operates ten company-owned businesses of the type THM, LLC franchises, operating under the TheHomeMag marks, *id.* ¶ 4, and THM of Ventura and The Home Improver together own several businesses of the type THM, LLC franchises, *id.* ¶ 5–6. These four entities have eliminated horizontal competition among these company-owned, affiliate-owned, and TheHomeMag franchisees within the direct mail home improvement advertising magazine market because each operates in its own "protected" territory. *Id.* ¶¶ 43–44. In short, these businesses agree not to compete in another franchisees' territory. Ex. A at 31.[7] Thus, GoDabo has sufficiently alleged the type of market allocation that is afforded *per se* treatment under *Sealy* and *Topco*.

### 3.  *Agreement to Allocate Market*

All Campbell Defendants challenge this element on the basis that GoDabo failed to explain away the possibility that Campbell Defendants were engaged in independent, parallel conduct that merely advanced their own interest.

> At the pleading stage, stating a § 1 claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made ... [and] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." [*Twombly*, 550 U.S.] at 556. Such an agreement is established by evidence that the conspiring parties "had a conscious commitment to a common scheme designed to achieve an unlawful objective."

---

[7] This is not a *vertical* restriction, which would be subject to a rule of reason analysis because vertical restrictions result when companies at different market levels in the chain of distribution of a specific product (such as a manufacturer and distributor) conspire to restrain trade. *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F. Supp. 1503, 1510 (D. Colo. 1992), *aff'd*, 13 F.3d 366 (10th Cir. 1993). Here, the Campbell Defendants and THM Management are all at the same level of distribution and, absent the agreements not to complete in each other's local markets alleged by GoDabo, would be natural competitors.

*Kissing Camels Surgery Ctr., LLC v. Centura Health Corp*., No. 12-CV-3012-WJM-BNB, 2014 WL 560462, at *4 (D. Colo. Feb. 13, 2014) (attached hereto as Exhibit J) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp*., 465 U.S. 752, 764 (1984)).

GoDabo alleges facts supporting this element. GoDabo alleges that the four Campbell Defendants share ownership. Am. Compl. ¶ 17; Ex. A at 1. GoDabo also alleges an explicit agreement not to compete among each others' markets, thus allowing them to promote the markets to prospective franchisees as "protected" markets free from threats of competition. Am. Compl. ¶¶ 43–44, 60. Moreover, the franchise disclosure document establishes on its face a system of allocating customers between markets, and in fact none of the company-owned, affiliate-owned, and TheHomeMag franchisees cross territories and compete with one another. Ex. A at 31, 40–41. This fact is *significant* evidence of an agreement to allocate the market as it is illogical to believe that markets with 100% ownership by a single firm (as occurred in the Denver Market) would not naturally attract competition absent such an agreement. Further, GoDabo alleges incentives for this monopolistic conduct in the form of the fees that the Campbell Defendants are able to charge their franchisees, who in turn receive the ability to charge monopolistic rents. Am. Compl. ¶¶ 44, 46, 65. These allocations do more than establish "merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. Rather, GoDabo has alleged market allocation— a "naked restraint" on trade that courts hold to be per se illegal without further factual inquiry— that does not require demonstration of either market definition or anticompetitive effect, although GoDabo has also sufficiently alleged both of these elements. *See, e.g.,* ANTITRUST LAW DEVELOPMENTS (6th) at 55.

**C. GoDabo Pleads Sufficient Facts To State Its Fifth Claim for Relief: Violation of Sherman Act § 2 – Monopolization (National Market) – Against THM, LLC, THM Holding, The Home Improver, and THM of Ventura**

Burden of Proof: GoDabo agrees that it has the burden of proof for this claim.

<u>Elements</u>: GoDabo generally agrees with Campbell Defendants' statement of the elements for this claim. *See Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) (stating that a monopolization claim has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power."). However, while Campbell Defendants did not list it as a separate element in this section, GoDabo agrees that its monopoly claims require proof of the relevant product and geographic market. Finally, while Campbell Defendants also did not list it as a separate element in this section, GoDabo generally agrees that a plaintiff's participation as a competitor or consumer within the market is necessary for proof of antitrust injury. *See Elliot Indus. Ltd P'ship v. BP America Prod. Co.*, 407 F.3d 1091, 1125 (10th Cir. 2005).

<u>Elements at Issue</u>:

### 1. *Proof of Product and Geographic Market*

All Campbell Defendants challenge this element on the grounds that GoDabo has not provided factually plausible support for its market definition. GoDabo incorporates in full its arguments in the previous sections regarding its product definition and national market definition.

### 2. *Participation in the Market*

The Campbell Defendants also assert that GoDabo has not alleged its participation in the national market. "[T]he party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003) (citation omitted).

GoDabo has alleged sufficient facts to support that it is a competitor in the restrained national market. Am. Compl. ¶¶ 16, 43, 53, 63. As with the plaintiff in *Associated Bill Posters*, GoDabo competes in the national market, despite the fact that its participation actually occurs at

particularized locations. 260 U.S. at 510. The question of whether GoDabo's participation in the national market is *sufficient* to make it a competitor is, again, a disputed question of fact not appropriate for a motion to dismiss.

### D. GoDabo Pleads Sufficient Facts To State Its Sixth Claim for Relief: Violation of 15 U.S.C. § 2 – Attempted Monopolization (National Market) – Against THM Holding, The Home Improver, and THM of Ventura

Burden of Proof: GoDabo agrees that it has the burden of proof for this claim.

Elements: GoDabo agrees with Campbell Defendants' statement of the elements for this claim. *See Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-CV-3012-WJM-BNB, 2014 WL 560462, at *9 (D. Colo. Feb. 13, 2014) (listing elements). GoDabo adds that its monopoly claims require proof of the relevant product and geographic market.

Elements at Issue:

#### 1. Relevant Market

THM Holding, The Home Improver, and THM of Ventura challenge this element. GoDabo incorporates in full its arguments above regarding its national market definition.

#### 2. Probability of Monopolization

THM Holding, The Home Improver, and THM of Ventura challenge this element and argue that there are no significant barriers to entry, thus defeating any possibility of monopolization.

> Entry barriers are particular characteristics of a market which impede entry by new firms into that market. [*Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 899 F.2d 951, 968 (10th Cir.1990)]. They may include high capital costs or regulatory or legal requirements such as patents or licenses. *Id.* Other examples include: (1) control over an essential or superior resource, (2) entrenched buyer preferences, and (3) high capital costs for new entrants. *Id.*

> [. . .]

> Entry barriers may also be created by the defendant's conduct itself. *Full Draw*, 182 F.3d at 756. For example, an organized boycott of the plaintiff's product may

constitute an entry barrier that confirms the defendant's dangerous probability of monopolization. *Id.*

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1103 (D. Colo. 2004). "Unlike the specifics of the relevant market, it is not clear that entry barriers must be specifically pled or proved in order for an antitrust plaintiff to recover." *Total Renal Care, Inc. v. W. Nephrology & Metabolic Bone Disease, P.C.*, No. 08CV00513-CMA-KMT, 2009 WL 2596493, at *8 (D. Colo. Aug. 21, 2009) (attached hereto as Exhibit K).

GoDabo sufficiently pleads barriers to entry in the relevant product market. GoDabo pled that the market barriers to entry include investing in large capital expenditure and technical know-how prior to opening its operation. Am. Compl. ¶¶ 20, 55; Ex. A at 11–12. GoDabo also pleads that the Campbell Defendants have created barriers to entry through the central advertising platform that publishes inaccurate and deceptive statements about TheHomeMag and its franchisees, including impossible-to-attain performance promises and wholly false demographic data. Am. Compl. ¶¶ 3–42, 44.

### 3. Conduct in Furtherance of an Attempt

THM Holding, The Home Improver, and THM of Ventura challenge this element by asserting that false advertising cannot support a Sherman Act monopolization claim, and further that GoDabo fails to distinguish between the Campbell Defendants at issue.

As discussed in the first section, trade disparagement may constitute an anti-trust injury. *Lenox*, 762 F.3d at 1127. GoDabo has sufficiently alleged facts meeting the Tenth Circuit's six-part test. Am. Compl. ¶¶ 21–42. Moreover, as discussed above, GoDabo alleged that each of the Campbell Defendants conspires to allocate the market, as well as participating in the false advertising. Am. Compl. ¶¶ 17, 43-44, 46, 60, 65; Ex. A at 1, 31, 40-41. Finally, as discussed above, the Tenth Circuit permits a plaintiff to bring a § 2 monopolization or attempted

monopolization claims under a single enterprise theory, and the plaintiff need not prove that each affiliated defendant independently satisfies every element of the claims in order to be held liable, but rather the aggregate conduct must be scrutinized. *Lenox,* 847 F.3d at 1236. The aggregate conduct of all of the Defendants here, as plausibly pleaded, sets forth an issue of fact as to their conduct in furtherance of an attempt to monopolize the national market sufficient to survive a motion to dismiss.

### E. GoDabo Pleads Sufficient Facts To State Its Seventh Claim for Relief: Violation of 15 U.S.C. § 2 – Conspiracy to Monopolize (National Market) – Against THM Holding, The Home Improver, and THM of Ventura

Burden of Proof: GoDabo agrees that it has the burden of proof for this claim.

Elements: GoDabo agrees with Campbell Defendants' statement of the elements for this claim. *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1028 (10th Cir. 2002) (listing four elements); *but see Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1231 (10th Cir. 2017) ("The elements of a § 2 conspiracy claim are "[1] conspiracy, [2] specific intent to monopolize, and [3] overt acts done in furtherance of the conspiracy." (citation omitted)). GoDabo agrees that its monopoly claims require proof of the relevant product and geographic market.

Elements at Issue:

#### 1. Combination or Conspiracy

THM of Ventura and The Home Improver challenge this element.

GoDabo has sufficiently alleged a combination or conspiracy. As discussed above, each of the Campbell Defendants conspires to allocate the market, as well as participating in the false advertising. Am. Compl. ¶¶ 17, 21–44, 46, 60, 65; Ex. A at 1, 31, 40–41.

#### 2. Overt Acts

THM of Ventura and The Home Improver challenge this element.

GoDabo has sufficiently alleged THM of Ventura and The Home Improver's role in this conspiracy. In particular, GoDabo alleged that THM Ventura operates two magazines in the Ventura, California and San Fernando, California "protected" territories. Am. Compl. ¶¶ 6, 39. GoDabo alleges that The Home Improver operates a separately branded magazine, also in "protected" territories. *Id.* ¶¶ 5, 39. As such, they are integral participants in Defendants' efforts to monopolize the national market due to their individualized participation in this "protected" territory scheme.

### 3. THM Holding incorporates arguments for conspiracy to monopolize the Denver Market (claim 3) and monopolization of national market (claim 5) against GoDabo on this claim

THM Holding challenges whether GoDabo has alleged a proper geographic and product market. GoDabo incorporates in full its arguments above regarding its national market definition

## F. GoDabo Pleads Sufficient Facts To State Its Eighth Claim for Relief: Violation of The Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – Against THM Holding, THM Ventura, and THM, LLC

Burden of Proof: GoDabo agrees that it has the burden of proof for this claim.

Elements: GoDabo agrees with Campbell Defendants' statement of the elements for this claim. *See Wilson v. AdvisorLaw LLC*, No. 17-CV-1525-MSK, 2018 WL 858738, at *2 (D. Colo. Feb. 14, 2018) (attached hereto as Exhibit L).

Elements at Issue:

### 1. *Materially False or Misleading Representations*

THM Holding, THM Ventura, and THM, LLC challenge this element seemingly on the basis that the statements asserted by GoDabo to be false are in fact true or, at the very least, not misleading.[8]

"Section 43(a) ... encompasses more than literal falsehoods." *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.,* 638 F. App'x 778, 784 (10th Cir. 2016) (internal citations omitted). "More specifically, the Lanham Act contemplates two variants of actionable advertising representations: (1) those that are literally false, and (2) those that, while literally true, are likely to mislead and confuse consumers." *Id.* at 785.

GoDabo alleged sufficient facts which, taken as true, establish this element. Am. Compl. ¶¶ 21–42. As discussed previously, GoDabo alleged that the statements contained in the July and August emails and the TheHomeMag Front Range media kit were false and/or misleading, had the tendency to confuse consumers, and did in fact confuse consumers (as demonstrated by the contractors cited in the Amended Complaint). These facts, taken in the light most favorable to GoDabo, establish this element. *Beltran*, 176 F. Supp. 3d at 1079.

### 2. *Confusion Or Mistake As To Characteristics Of Goods Or Services*

THM Holding, THM Ventura, and THM, LLC also challenge this element on the basis that GoDabo has not adequately alleged that any false or deceptive statements caused *actual* consumer confusion.

"If the plaintiff shows literal falsity, the third element is presumed established; for statements that are not literally false, the plaintiff must show that they tend to mislead or confuse

---

[8] THM Holding and THM Ventura specifically challenge the Court's personal jurisdiction over them under the Lanham Act. Alternatively, they incorporate by reference the arguments made by THM, LLC.

the relevant market." *Cocona, Inc. v. Singtex Indus. Co.*, No. 14-CV-01593-MJW, 2014 WL 5072730, at *8 (D. Colo. Oct. 9, 2014) (attached hereto as Exhibit M) (citing *Zoller Labs., LLC v. NBTY, Inc.*, 111 Fed. Appx. 978, 982 (10th Cir. 2004)).

GoDabo alleged sufficient facts which, taken as true, establish this element. As discussed directly above, GoDabo alleged facts that support literal falsity, therefore it does not need to establish that the statements misled or confused consumers within the relevant market. Nevertheless, GoDabo has also alleged facts that, taken as true, would allow a reasonable fact finder to conclude that these statements misled customers not to purchase GoDabo's products. *Compare Century Martial Arts Supply Inc. v. National Assn. of Professional Martial Artists*, 129 Fed. Appx. 421, 427 (10th Cir. 2005) (affirming jury verdict of similar facts, finding that customer's testimony about electing not to do business with plaintiff after defendant published misleading comparisons between the two businesses sufficed to demonstrate causation and damages). These facts include that "based on the timing of numerous cancelled sales and statements of Defendants related to GoDabo by contractors, at least 22 (and likely many more) contractors have decided not to advertise with GoDabo, or have cancelled ongoing advertisements with GoDabo, as a direct and proximate result of Defendants' false statements." Am. Compl. ¶ 40. In addition, GoDabo alleged that statements about the reliability of GoDabo are "likely to prevent customers from switching toward that uncertainty, and to instead adopt a 'wait and see' attitude where customers are more hesitant to be early adopters of a new alternative." *Id.* ¶ 42. Finally, GoDabo alleged that these statements were intended to reach GoDabo's customers and actually deceived a substantial portion of their intended audience. *Id.* ¶¶ 103–104. These plausible allegations are sufficient at this stage to sustain GoDabo on this element.

### 3. *Injury to Plaintiff*

THM Holding, THM Ventura, and THM, LLC challenge whether GoDabo has sufficiently pleaded injury based on false and misleading statements.

"A plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[, which] occurs when deception of consumers causes them to withhold trade from the plaintiff." *Intermountain Stroke*, 638 Fed. App'x at 791 (citation omitted); *accord Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014) ("We thus hold that to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales.")."The Tenth Circuit, following the Second and Eighth Circuits, has said that courts may presume injury when the parties are "obvious competitors" with respect to the service being misrepresented." *Berken v. Jude*, No. 12-CV-02555-RPM, 2013 WL 6152347, at *2 (D. Colo. Nov. 22, 2013) (attached hereto as Exhibit N) (*citing Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000)).

GoDabo alleged sufficient facts which, taken as true, would amount to economic or reputational injury. GoDabo alleged that seven contractors broke off their contracts with it following the email of July 5, 2018, resulting in the loss of many thousands of dollars of advertising revenue. Am. Compl. ¶¶ 26–32. GoDabo also alleged that at least 22 (and likely many more) contractors have decided not to advertise with GoDabo, or have cancelled ongoing advertisements with GoDabo, as a direct and proximate result of Defendants' false statements. *Id.* ¶ 40. Finally, GoDabo alleged that this has caused hundreds of thousands of dollars in lost revenue to GoDabo and very likely will destroy GoDabo as a going concern. *Id.* These allegations are sufficient to demonstrate injury at the motion to dismiss stage.

### G. GoDabo Plead Sufficient Facts To Establish Personal Jurisdiction Under The Sherman Act

<u>Burden of Proof</u>: GoDabo *disagrees* with Campbell Defendants' statement of the burden of proof. Where a plaintiff seeks to establish personal jurisdiction based on a statute that allows for nationwide service of process, the burden shifts to the defendant to show, in the first instance, "that his liberty interests actually have been infringed" and that "subjecting him to in personam jurisdiction in the forum will make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent." *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 229 F. Supp. 2d 1209, 1215 (D. Kan. 2002) (citing *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212–13 (10th Cir. 2000)).

<u>Elements</u>: GoDabo adds to Campbell Defendants' statement of the elements that, to establish personal jurisdiction under the Sherman Act in a Federal Question case, proper service establishes personal jurisdiction over the defendants provided that the court's exercise of jurisdiction comports with the Fifth Amendment's due process guarantee. Ex. F, *Shell,* 2010 WL 1348548, at *11 (citing *Peay*, 205 F.3d at 1209).

<u>Elements at Issue</u>:

### 1. Due Process

THM Holding, THM of Ventura and The Home Improver challenge this element.

In *Peay*, the Tenth Circuit emphasized the high hurdle that Campbell Defendants need to overcome to defeat jurisdiction, stating that "[w]e emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Peay*, 205 F.3d at 1212.

Defendants' arguments amount to a claim that none of the Defendants at issue have *minimum* contacts with Colorado to justify personal jurisdiction, but as stated above this is not the standard. Moreover, any argument for inconvenience is outweighed by the Federal interest in

effectively and efficiently litigating monopolization claims that involve the national marketplace. *Id.* at 1213 ("Certainly, in this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened.") (internal citations omitted); *id.* (Where ... Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.").

It is the clear policy of the Sherman Act to permit joining parties from any district when the ends of justice require it. 15 U.S.C. §§ 5, 10. In this case, as discussed above, GoDabo has alleged coordinated action between the several Campbell Defendants to restrain trade in the relevant product market at the national level, by allocating the market between themselves and their various businesses, and by engaging in other acts to enforce the monopolies of each local TheHomeMag franchise and affiliate- or company-owned business. Thus, the ends of justice require that all participants in this scheme appear in the action.

Moreover, as a practical matter, the Campbell Defendants share a principal and are all represented by the same counsel in Colorado, reducing the burden upon each of them. Though one of the owners of THM Ventura is located in California and Mr. Campbell is located in Florida, the business of TheHomeMag, its affiliated and company-owned businesses, and its franchises is nationwide and directs its business dealings explicitly at all states, including specifically Colorado where all Defendants have agreed to carve out a "protected territory" for Defendant Antsel Marketing, LLC, and from which contact with Colorado all Defendants reap economic benefit thereby. *See generally* Ex. A. Furthermore, there is no other preferable forum.

Thus, THM Holding, THM of Ventura and The Home Improver have not overcome their burden to show that that their liberty interests have been infringed or that litigating in Colorado would put them at a severe disadvantage to their opponent. Even if they had, the Federal interest

in litigating Sherman Act claims against all relevant parties would tip the balance in this case in favor of jurisdiction.[9]

### H.  GoDabo Pleads Sufficient Facts To Establish Personal Jurisdiction Under The Lanham Act

Burden of Proof: GoDabo agrees it has the burden of proof to establish a basis for personal jurisdiction under the Lanham Act.

Elements: GoDabo agrees in part and disagrees in part with Campbell Defendants' statement of the elements for establishing personal jurisdiction under the Lanham Act. GoDabo generally agrees with Defendants' statement of the minimum contacts standard. *See Shell,* 2010 WL 1348548, at *7 (setting forth minimum contacts requirement of due process). In addition, GoDabo asserts an alternate theory of personal jurisdiction, conspiracy jurisdiction, as set forth below.

Elements at Issue:

### 1.  Minimum Contacts

THM Holding and THM of Ventura challenge this element.

Under the first prong of a standard personal jurisdiction analysis, a court decides whether the defendant has sufficient minimum contacts with the forum state such that he should "reasonably anticipate being haled into court there." *Shell,* 2010 WL 1348548, at *7.

GoDabo incorporates its arguments above regarding jurisdiction under the Sherman Act into this section in favor of jurisdiction over THM Holding and THM of Ventura. If the Court permits any of GoDabo's Sherman Act claims against THM Holding and THM of Ventura to continue past the motion to dismiss, then they are subject to its jurisdiction.

---

[9] Regardless, even if this Court were to find that sufficient minimum contacts were required to affect personal jurisdiction under the Sherman Act, that requirement would still be met through the conspiracy theory of personal jurisdiction, as discussed below.

### 2. *Conspiracy Theory of Jurisdiction*

Alternatively, the Tenth Circuit has acknowledged that, in some circumstances, personal jurisdiction may be exercised based on the existence of a conspiracy and acts taken in furtherance of the conspiracy by a co-coconspirator in the forum state. *See Melea, Ltd. v. Jawer Sa*, 511 F.3d 1060, 1069 (10th Cir. 2007). To exercise personal jurisdiction based on a conspiracy theory, the plaintiff must come forward with more than bare allegations of a conspiracy; the plaintiff must allege facts that would support a *prima facie* showing of a conspiracy. *Shell*, 2010 WL 1348548, at *10.

GoDabo incorporates its arguments above regarding THM Holding and THM of Ventura's participation in the Section 1 horizontal market allocation and Section 2 conspiracy claims as supports for its assertion that THM Holding and THM of Ventura have taken acts in furtherance with a coconspirator in the forum state, Antsel Marketing, LLC. Each participates in the market allocation of "protected territories" whereby the conspiracy as a whole directs its business dealings explicitly at all states, and specifically at Colorado by their agreement to carve out a "protected territory" for Defendant Antsel Marketing, LLC. THM Holding and THM of Ventura both reap economic benefit from the nationwide continuity of this market allocation scheme, which allegations are sufficient to establish personal jurisdiction at this stage.

## III. CONCLUSION

WHEREFORE, GoDabo respectfully requests that the Court deny the Campbell Defendants' Motions to Dismiss its First Amended Complaint in full.

Respectfully submitted this 1st day of March, 2019.

GODFREY | JOHNSON, P.C.

*/s/ Jeffrey S. Vail*
Brett Godfrey
Jeffrey S. Vail
Lily Nierenberg
9557 South Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax:    (303) 228-0701
Email:  godfrey@gojolaw.com
Email:  vail@gojolaw.com
Email:  nierenberg@gojolaw.com

## CERTIFICATE OF SERVICE

I hereby certify I have served the foregoing upon the parties hereto via CM/ECF – U.S. District Court filing, this 1st day of March 2019.

James D. Kilroy, Esq.
Ellie Lockwood, Esq.
Snell & Wilmer, LLP-Denver
1200 17th Street, One Tabor Center
Suite 1900
Denver, CO 80202
Phone: (303) 634-2000
Fax:     (303) 634-2020
Email: jkilroy@swlaw.com
Email: elockwood@swlaw.com
Attorneys for Defendants Antsel Marketing, LLC, Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith

Thomas B. Quinn, Esq.
Jacqueline R. Guesno, Esq.
Gordon Rees Scully Mansukhani, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
(303) 534-5154
Email: tquinn@grsm.com
Email: jguesno@grsm.com
Attorneys for THM Management, LLC d/b/a TheHomeMag, The Home Mag Holding Company, LLC, Campbell Wiener, Inc. d/b/a THM of Ventura, and The Home Improver, LLC

GODFREY | JOHNSON, P.C.

*/s/ Jeffrey S. Vail*
Brett Godfrey
Jeffrey S. Vail
Lily Nierenberg
9557 South Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax:     (303) 228-0701
Email: godfrey@gojolaw.com
Email: vail@gojolaw.com
Email: nierenberg@gojolaw.com