**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02672-MSK-NRN

GDHI MARKETING, LLC D/B/A GODABO HOME AND LIFE,

      Plaintiff,

v.

ANTSEL MARKETING, LLC D/B/A THEHOMEMAG FRONT RANGE,
THM MANAGEMENT, LLC D/B/A THEHOMEMAG,
THE HOME MAG HOLDING COMPANY, LLC,
CAMPBELL WIENER, INC. D/B/A THM OF VENTURA,
THE HOME IMPROVER, LLC,
CLAIRE LINDSAY,
ANNIE MULLEN,
BARBARA ROBLES,
ELLEN SMITH,

      Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS ANTSEL MARKETING, LLC, CLAIRE LINDSAY, ANNIE MULLEN,
BARBARA ROBLES, AND ELLEN SMITH'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT [ECF NO. 42]**

---

Plaintiff GDHI Marketing, LLC d/b/a GoDabo Home & Life ("GoDabo") opposes the relief requested in Defendants Antsel Marketing, LLC, Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith's (collectively, "Front Range Defendants") Motion to Dismiss its First Amended Complaint [ECF no. 42] and for the reasons set forth below respectfully requests that this Court deny the Motion in full.[1]

---

[1] To the extent that claims are also common between the Front Range Defendants and the remaining defendants whose motions are addressed under separate cover, GoDabo incorporates those arguments here.

## I. INTRODUCTION

The Front Range Defendants together operate a direct mail home improvement advertising magazine in the Denver area called TheHomeMag Front Range. Am. Compl. [ECF no. 21] ¶¶ 1, 7–8, 19, 22–23. TheHomeMag Front Range is owned by Antsel Marketing, LLC (also referred to herein as "THM Front Range"). *Id.* ¶ 7. Defendant Claire Lindsay is a 50% owner of Antsel Marketing, LLC. *Id.* ¶ 8. Annie Mullen, Barbara Robles, and Ellen Smith are the TheHomeMag Front Range's sales representatives. *Id.* ¶ 23. The Front Range Defendants coordinate their operations with THM Management, LLC, the national franchisor, as well as The Home Mag Holding Company, LLC, Campbell Wiener, Inc. d/b/a THM of Ventura, The Home Improver, LLC (collectively, the "Campbell Defendants"), who together operate a national network of magazines that includes TheHomeMag Front Range. *Id.* ¶¶ 17–19.

Throughout their national network of magazines, the Campbell Defendants have eliminated horizontal competition among company-owned, affiliate-owned, and franchisee-owned magazines by intentionally carving up the national geographic market into separate "protected" territories for each of their magazines. *Id.* ¶¶ 43–44. This means that no magazines are allowed to market in one-another's agreed territory. Ex. A (Franchise Disclosure Document) at 31. In addition, the Campbell Defendants have created and utilize a central advertising and marketing platform for each such magazine that publishes knowingly false and deceptive statements about TheHomeMag and its franchisees in order to erect substantial barriers to entry by competitors into any of these "protected" territories. Am. Compl. ¶¶ 40, 44. As a result, Campbell Defendants have monopoly power in the market for direct mail home improvement advertising magazines.

Until 2018, TheHomeMag Front Range held a 100% share of the direct mail home improvement advertising magazine market in the Denver Metro Area. *Id.* ¶ 61. THM Front Range

as a franchisee maintains its monopoly through assistance from the Campbell Defendants including the latter's system of price fixing, exclusive suppliers, coordinated false advertising, and confidential operations guidance, in addition to its "protected" territory. *Id.* ¶ 43; Ex. A at 9, 13, 20, 23–24. Details of this assistance and the requirements on franchisees to utilize this assistance are explicitly described in the franchise disclosure document. Ex. A at 9, 13, 20, 23–24.

GoDabo is the only competitor of TheHomeMag Front Range for direct mail home improvement advertising magazines in the Denver Metro Area. Am. Compl. ¶¶ 53, 63. GoDabo, as with any entrant to this product market, faced steep barriers to entry, including the need to finance and sustain large capital expenditures and marshal significant technical know-how to open and maintain its operation. *Id.* ¶¶ 20, 55; Ex. A at 11–12. Since entering the market in early 2018, GoDabo has struggled to attract and hold advertising customers despite the fact that it offers a superior product at a more attractive price than TheHomeMag. Am. Compl. ¶¶ 1, 25, 40, 63, 65. Most significantly, false and deceptive statements made by agents of TheHomeMag Front Range, such as impossible-to-attain performance promises and wholly false demographic data, have created a virtually insurmountable barrier to entry. *Id.* ¶¶ 37–42.

As one pronounced example of this anticompetitive conduct, in July 2018, as GoDabo was approaching a 20% market share, Antsel Marketing, LLC and Ms. Lindsay, Ms. Mullen, Ms. Robles, and Ms. Smith each separately and individually sent a disparaging email about GoDabo to a large list of their shared clients and others, resulting in confirmed loss of advertising customers to GoDabo. *Id.* ¶¶ 23–32. The email stated:

> It has been brought to our attention that GoDabo has not yet mailed the issue that was supposed to be in homes June 25th. He [Greg Harline of GoDabo] claims it was to be mailed July 2nd, but to our knowledge that has not happened either. He is claiming a delay at the printers but we believe the problem is that he has not paid the Post Office, and they will not mail unless they have been paid in full in advance. As a valued client, I wanted you to be sure you are not being ripped off by this guy,

and would highly recommend you NOT pay for the June 25th issue until you have been provided a verified PROOF OF MAILING statement from the United States Postal Service.

*Id.* ¶ 23; Ex. B (July 5, 2018 email). In reality, postage was paid in full on June 26, 2018 by cashier's check payable to Postmaster Serial # 0478802647. *Id.* ¶ 24. At the time this email was sent, the issue was in the mail and about to arrive in homes. *Id.*; Ex. C (Proof of Mailing).

Similarly false and disparaging statements have continued. Am. Compl. ¶¶ 34–38. On August 31, 2018, Krystal Toner, the office manager for THM Front Range, sent a mass email to hundreds of TheHomeMag Front Range and GoDabo's customers, making the following claims:

We do NOT saturate zipcodes. We handpick every single home that receives TheHomeMag & HomeImproved. […]

It would save us a ton of money to flood ZIP codes with thousands of magazines like 95% of our competitors, however, we would not be doing the best job for you if we did this. […]

Here's an easy tip for you to check if a magazine or flyer is being bulk mailed to everyone, including renters, business parks, and other homes that cannot afford your product or services… if the Home Owner's name does not appear on the address portion of the Magazine, instead it says 'Current Homeowner,' or 'Resident,' this is being saturation mailed.

*Id.* ¶¶ 34–35. In fact, GoDabo is the only competitor to TheHomeMag in the Denver Market. *Id.* ¶ 63. GoDabo does not "saturate" zipcodes. *Id.* ¶ 35. GoDabo carefully incorporates house-by-house demographic data to develop a high-quality list of prime homeowners. *Id.* ¶ 36. TheHomeMag Front Range's mailing list, on the other hand, is not handpicked. TheHomeMag Front Range's mailing list is purchased from the same third-party provider GoDabo uses and is virtually identical to GoDabo's in that it is selected based on generic criteria like ownership-status, house value, and average income. *Id.* ¶¶ 35–36.

Furthermore, the media kit for TheHomeMag Front Range contains several of false and deceptive statements including that "TheHomeMag Denver Reader . . . [has an] average net worth

[of] $1.73 million" and that "72% of our readers frequently purchase products or services from ads seen in TheHomeMag." *Id.* ¶ 37. This dramatically overstates the actual net worth of recipients as well as purchase rates. *Id.* The media kit is designed in conjunction and coordination with the Campbell Defendants. *Id.* ¶¶ 37–38; Ex. A at 12. Front Range Defendants sent this media kit, containing these false statements, to well over 1,000 actual and prospective customers of TheHomeMag Front Range and GoDabo in 2018. Am. Compl. ¶ 38.

Front Range Defendants made these false and misleading statements to home-improvement contractors to induce them to pay higher prices to TheHomeMag Front Range for a product that is inferior. *Id.* ¶ 46. Despite being a new entrant and not having the nationwide purchasing power for printing services enjoyed by TheHomeMag Denver, GoDabo offers advertisements to contractors within The Denver Market for thirty to sixty percent less than the prices charged by THM Front Range. *Id.* GoDabo's pricing is reflective of the actual cost of goods sold plus a reasonable profit. *Id.* As a result of Motion Defendants' conduct, hundreds of home-improvement contractors and hundreds of thousands of end-consumers have enjoyed a lower selection and borne higher prices. *Id.* ¶ 48. As a result of this ongoing campaign of false and deceptive advertising, within the structure of the system created by the Campbell Defendants, Motion Defendants have monopolized the Denver Market, and have effectively excluded GoDabo from competing. *Id.* ¶ 47.

In order to address this anticompetitive landscape, which harms GoDabo as well as the home improvement advertising customers in both Denver and the National Market who must pay higher prices for lower-quality products, and also their customers to whom they pass on those costs, GoDabo filed claims pursuant to the Sherman Act §§ 1 and 2 and the Lanham Act § 43(a) against all Defendants, as well as related state law claims against the Front Range Defendants. "The fundamental purpose of the Sherman Act was to secure equality of opportunity and to protect

the public against evils commonly incident to destruction of competition through monopolies and combinations in restraint of trade." *Ramsay Co. v. Associated Bill Posters of U. S. and Canada*, 260 U.S. 501, 512 (1923). "When competition is reduced, prices increase and unit sales decrease." *Burke v. Ford*, 389 U.S. 320, 322 (1967).

GoDabo's First Amended Complaint included over twenty pages of detailed factual allegations which, if true, support its claims.[2] [ECF no. 21.] Nevertheless, the Front Range Defendants assert a number of flawed arguments against GoDabo including, *inter alia*, that (1) GoDabo failed to meet the federal pleading standard on several of its claims despite its detailed factual narrative; that (2) GoDabo failed to state an antitrust injury, despite the clear harm to *competition* (as well as itself) alleged in the Amended Complaint; that (2) the statements in the TheHomeMag Front Range's media kit and its agents' emails were not false or misleading, despite the clear questions of fact that this assertion raises; that (3) false advertising cannot form the basis of a monopolization claim, despite that not being an accurate statement of the law; that (4) GoDabo too narrowly defined a market, despite what is plainly a fact question; that (5) Front Range Defendants cannot conspire with themselves or the Campbell Defendants, despite GoDabo's assertion that they have separate economic interests and are not wholly owned subsidiaries; and that (6) GoDabo did not plead any evidence of conspiratorial conduct by certain Front Range Defendants, despite its ability to prove conspiracy through circumstantial evidence, as well as the direct evidence of conspiracy in the franchise disclosure document.

Each of GoDabo's challenged claims is supported below in this Court's preferred format. As this Court has recognized, "[t]here is a strong presumption against dismissal for failure to state

---

[2] This Response addresses any concern that the Amended Complaint is a "shotgun pleading" by connecting the allegations in the Amended Complaint to the claims asserted.

a claim under Rule 12(b)(6)." *Shell v. Am. Family Rights Ass'n*, No. 09CV00309-MSK-KMT, 2010 WL 1348548, at *14 (D. Colo. Mar. 31, 2010) (attached hereto as Exhibit F) (citing *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir.1999)). "[T]he Court must take Plaintiffs' factual allegations as true, consider them as a whole, and view them in the light most favorable to Plaintiffs in evaluating a motion to dismiss." *Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1079 (D. Colo. 2016). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). GoDabo has alleged a detailed factual narrative in support of its claims that is more than sufficient at this stage.[3]

## II. ARGUMENT

### A. *GoDabo Plead Sufficient Facts to State Its First Claim For Relief: Violation of Sherman Act § 2 – Monopolization (Denver Market) – Against THM Front Range*

Burden of Proof: GoDabo agrees that it has the burden of proof on this claim.

Elements: GoDabo agrees with Front Range Defendants' statement of the elements for this claim.

Elements at Issue:[4]

---

[3] Additional relevant facts alleged in the Amended Complaint or contained in the TheHomeMag franchise disclosure document are addressed below as relevant to each of the claims.

[4] Under the majority of their claim headings (one through seven), Front Range Defendants list as a disputed "element" that GoDabo has failed to meet the pleading standard. GoDabo understands this to mean that Front Range Defendants believe that it has failed to state a claim under Fed. R. Civ. P. 12(b)(6) with the regard to each *disputed* element. Consistent with the Court's practice standards, GoDabo incorporations the allegations from its Amended Complaint that it believes are sufficient to meet the federal pleading standard under the heading of each challenged element. If, instead, Front Range Defendants mean to indicate that GoDabo has failed to meet its pleading standard with regard to *all* elements of its claims (one through seven), then GoDabo would move to strike that portion of the Front Range Defendants' Motion as noncompliant with the Court's standards and not sufficient to put GoDabo on notice of the alleged defects of its pleading.

### 1. *Antitrust Injury*

Front Range Defendants assert that GoDabo has failed to allege antitrust standing because, they assert, GoDabo failed to allege harm to competition apart from its own business.

"The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990). "[T]he complained-of conduct must have a tendency, for example, to decrease the number of competitors (either through barriers to entry or practices that drive competitors out of the market) or to reduce the incentive for competitors to compete with each other." *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-CV-3012-WJM-NYW, 2016 WL 8416760, at *6 (D. Colo. July 13, 2016) (attached hereto as Exhibit G).

Conduct that eliminates one of two competitors or excludes a potential competitor from a relevant market harms competition. *Full Draw Productions v. Easton Sports, Inc.*, 182 F.3d 745 (10th Cir.1999). "Business torts generally, and acts of fraud more particularly, can sometimes give rise to antitrust liability. At least when the defendant's deceptive actions—usually aimed at third parties in the marketplace—are so widespread and longstanding and practically incapable of refutation that they are capable of injuring both consumers and competitors." *Novell*, 731 F.3d at 1079–80. "Reduced consumer choice as a result of monopolistic behavior is the sort of harm to competition that the antitrust laws were intended to prevent." *Total Renal Care, Inc. v. W. Nephrology & Metabolic Bone Disease, P.C.*, No. CIV.A08CV00513CMAKMT, 2009 WL 2596493, at *6 (D. Colo. Aug. 21, 2009) (attached hereto as Exhibit H) (citing *Full Draw*, 182 F.3d at 754).

Here, GoDabo has specifically alleged that it suffered antitrust injury, because "the precise actions that directly damaged GoDabo also facilitated Defendants' maintenance of monopoly power, reduced competition, and increased prices to the consumer." Am. Compl. ¶ 65; *see also* ¶ 66. In addition, as discussed in more detail below concerning GoDabo's allegation that trade disparagement is sufficient to constitute willful acquisition of monopoly power in this case, GoDabo has sufficiently alleged facts to support that the false advertising by Front Range Defendants, and THM Front Range as it relates to this claim in particular, harms competition by threatening to eliminate GoDabo from the market. *See generally*, Am. Compl. ¶¶ 21–42, 47, 65.

These assertions are sufficient at the pleading stage to allege antitrust injury. *See*, *Total Renal Care*, 2009 WL 2596493, at *5 ("This is not a case where ARA's loss is caused by increased competition, but rather by TRC's alleged attempts to eliminate a competitor and thus lessen competition. At least at the pleading stage, these allegations are sufficient to show antitrust injury.").

### 2. *Monopoly Power in the Relevant Market*

THM Front Range challenges this element on the basis that GoDabo (a) too narrowly defines the product market, (b) fails to assert THM Front Range's market power, and (c) fails to allege that THM Front Range's actions have impacted interstate commerce.

GoDabo has sufficiently alleged facts supporting this element, as follows.

### a. *The Relevant Market*

"Defining the relevant market for purposes of antitrust analysis requires the plaintiffs to define both a product market and a geographic market." *Christou v. Beatport, LLC*, 849 F. Supp. 2d 1055, 1064 (D. Colo. 2012). "The plaintiff must define the relevant market by making specific reference to "the reasonable interchangeability of use or the cross-elasticity of demand between

the product and substitutes for it." *Id.* (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). "[B]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Id.* at 1066 (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 199–200 (2d Cir. 2001)); *accord Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1120 (10th Cir. 2014) ("The differing definitions create a fact question on the product market, precluding summary judgment.").

GoDabo has sufficiently alleged facts supporting its Denver Market definition. In this case, GoDabo defines the product market as "targeted direct-mail home-improvement advertising magazine[s]." Am. Compl. ¶ 16. GoDabo provides detailed and plausible factual support for this assertion. *Id.* ¶¶ 49–55. This includes the fact of differentiation from other local print advertisements, *id.* ¶ 50; the fact that specialized vendors are present within the product market, *id.* ¶ 51; the fact that Defendants' own franchise disclosure document defines the relevant market as the "home improvement advertising magazine…line of business," *id.* ¶ 52; the fact that TheHomeMag's activities specifically target GoDabo as the only competitor within the relevant market, *id.* ¶ 53; the differences in type, grade, distribution, audience, and qualify of the product form other forms of advertising, *id.* ¶ 54; and the high barriers to entry, *id.* ¶ 55. GoDabo also plead specific facts regarding the reasonable interchangeability or cross-elasticity of the demand between the product and its substitutes. *Id.* ¶¶ 50, 54.

GoDabo defines the Denver Market geographically as the seven county Denver metropolitan statistical area, and as support for that definition asserts that "there is a high cross-elasticity of demand by consumers within this area for purchase of home improvement services, whereas there is a very low cross-elasticity of demand for consumers located outside this area." ¶ 56; *see also* ¶ 57–59 (supporting claims for Denver geographic market).

The Front Range Defendants concede the accuracy of GoDabo's allegation that prior to GoDabo's entry into the market in January 2018 "THM Front Range was the only home improvement exclusive direct-mail publication" in the Denver market. Mot. [ECF No. 42] at 3. They further concede that "[w]ithin just months of its entry into the Denver metropolitan market, Plaintiff secured nearly 20% of the market," and that there are no other publications comprised solely of home improvement advertisements in the Denver metropolitan area. These facts support the same market definition that GoDabo sets forth. Am. Compl. at ¶¶ 49–60.

GoDabo has met its burden at the pleadings stage to set forth a relevant market definition.

### b.  Monopoly Power

THM Front Range challenges this element on the basis that there are no significant barriers to entry, thus defeating any possibility of monopolization.

> Entry barriers are particular characteristics of a market which impede entry by new firms into that market. [*Reazin v. Blue Cross & Blue Shield of Kan., Inc*., 899 F.2d 951, 968 (10th Cir.1990)]. They may include high capital costs or regulatory or legal requirements such as patents or licenses. *Id.* Other examples include: (1) control over an essential or superior resource, (2) entrenched buyer preferences, and (3) high capital costs for new entrants. *Id.* […]
>
> Entry barriers may also be created by the defendant's conduct itself. *Full Draw*, 182 F.3d at 756. For example, an organized boycott of the plaintiff's product may constitute an entry barrier that confirms the defendant's dangerous probability of monopolization. *Id.*

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1103 (D. Colo. 2004). "Unlike the specifics of the relevant market, it is not clear that entry barriers must be specifically pled or proved in order for an antitrust plaintiff to recover." *Total Renal Care*, 2009 WL 2596493, at *8.

GoDabo sufficiently pleads barriers to entry in the relevant product market. GoDabo pled that the market barriers to entry include investing in large capital expenditure and technical know-

how prior to opening its operation. Am. Compl. ¶¶ 20, 55; Ex. A at 11–12. GoDabo also pleads that the Defendants, including THM Front Range, have created barriers to entry through the central advertising platform that publishes inaccurate and deceptive statements about TheHomeMag and its franchisees, including impossible-to-attain performance promises and wholly false demographic data such as that contained in THM Front Range's media kit. Am. Compl. ¶¶ 37–42, 44. Thus GoDabo has sufficiently alleged monopoly power.

Ultimately, whether market power is durable is a fact question for the jury. *Lenox*, 762 F.3d at 1124. Thus, GoDabo has met its burden at this pleading stage.

### c. Interstate commerce

THM Front Range challenges whether GoDabo sufficiently plead a nexus between THM Front Range's actions and interstate commerce.

> To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce.

*McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980).

GoDabo has plainly alleged that the conduct in question is "in" or "in the flow of" interstate commerce because it fundamentally utilizes the United States Mail, involves shipment of goods between states, and involves payment of franchise fees between states. Am. Compl. ¶ 14. Moreover, it is clear that THM Front Range's communications to home improvement contractors and consumers of home improvement products affects the flow of goods through interstate commerce, as does the national franchise system that involves cooperation between entities in different locations across the country to design and print advertising. *Id.*; *see generally* Ex. A.

The fact that THM Front Range's primary business is situated in one territory does not automatically foreclose a nexus to interstate commerce. *See McLain*, 444 U.S. at 242 ("To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity."). Front Range Defendants have not controverted these assertions.

### 3.   *Willful Acquisition of Monopoly Power*

THM Front Range challenges whether GoDabo sufficiently plead willful acquisition of monopoly power by *unlawful means* because, it asserts, false and deceptive statements concerning its own business and GoDabo's can rise to the level of anticompetitive conduct.

Although trade disparagement may be presumed not to constitute an antitrust injury, this presumption can be overcome by "a demonstration that a competitor's false advertisements had the potential to eliminate, or did in fact eliminate, competition." *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 895 (5th Cir. 2016). The Tenth Circuit has tacitly adopted the six-factor test from other circuits, which states that

> A Section 2 plaintiff may rebut this presumption by satisfying a six-factor test, showing that the disparagement was: (1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible to neutralization or other offset by rivals.

*Lenox*, 762 F.3d at 1127.

GoDabo has sufficiently alleged facts meeting this test. Am. Compl. ¶¶ 21–42. Included within these allegations are the assertion that the statements contained in the July and August emails and the TheHomeMag Front Range media kit are false because, *inter alia*, (a) the issue was in the mail on July 5, 2018, despite the claim on July 5, 2018 that "GoDabo has not yet mailed the issue," and (b) the postage was paid on June 26, 2018, despite the claim on July 5, 2018 that "he

has not paid the Post Office," (c) TheHomeMag Front Range's mailing list is not "handpicked" despite the claim in the August 31, 2018 email, (d) GoDabo does not "saturate zipcodes" despite the claim in the August 31, 2018 email, (e) the average net worth of TheHomeMag Front Range reader is not $1.73 million despite the claim in the media kit, and (f) 72% of the TheHomeMag readers do not frequently purchase products or services from ads in TheHomeMag, despite the claim in the media kit. *Id.* ¶¶ 24, 35–37. In addition, GoDabo alleged that the statements are material because they actually influenced buying decisions for prospective home improvement contractor advertisers, *id.* ¶¶ 25–32, 41; that they were likely to induce reasonable reliance because they were made by the sole established participant in the market, *id.* ¶ 41; that they were made to home improvement contractors who are largely not specialists in the advertising industry, *id.*; that the statements against GoDabo had continued since at least April 2018 and the false claims about TheHomeMag generally have continued for years, *id.* ¶¶ 21, 42; and that the campaign is not readily susceptible to neutralization by GoDabo as the recent entrant to the market, when those statements are made by an established participant, *id.* ¶ 42. Moreover, additional assertions by GoDabo demonstrate that these statements have the very real potential to eliminate GoDabo as a competitor in the market. *Id.* ¶¶ 1, 21, 25, 47, 65.[5]

Thus, GoDabo has sufficiently alleged that the Front Range Defendant's statements had the potential to eliminate or did in fact eliminate competition.

---

[5] Front Range Defendants also failed to argue that their statements about their own magazine were not anti-competitive under the Sherman Act, and only addressed those statements in response to GoDabo's Lanham Act claim by claiming that they were not entirely false—not that they were not anti-competitive. As such, Front Range Defendants concede (by omission) that Plaintiff adequately pled that Front Range Defendants' statements about their own product were anticompetitive.

**B. *GoDabo Plead Sufficient Facts to State Its Second Claim For Relief: Violation of 15 U.S.C. § 2 – Attempted Monopolization (Denver Market) – Against THM Front Range***

Burden of Proof: GoDabo agrees that it has the burden of proof on this claim.

Elements: GoDabo agrees with Campbell Defendants' statement of the elements for this claim.

Elements at Issue:[6]

**1. *Antitrust Standing***

GoDabo incorporates in full its arguments above regarding antitrust standing.

**2. *The Relevant Market***

GoDabo incorporates in full its arguments above regarding its Denver market definition.

**3. *Probability of Success in Monopolizing Market***

THM Front Range challenges this element on the basis that GoDabo "usurped nearly 20% of the market" in "just a few months."

GoDabo incorporates in full its arguments above regarding barriers to entry.

**4. *Specific Intent to Monopolize***

THM Front Range challenges whether GoDabo adequately plead this element.

Attempted monopolization requires proof that the defendant had a "specific intent to destroy competition *or* build monopoly." *Times-Picayune Publ'g Co., v. United States*, 345 U.S. 594, 626 (1953) (emphasis added). Specific intent may be inferred from anticompetive conduct. *See, e.g., M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 166 (4th Cir. 1992) ("Specific intent may be inferred from the defendant's anticompetitive practices.");

---

[6] Where a plaintiff adequately pleads a claim of actual monopolization, a claim of attempted monopolization must also lie. *Lenox II*, 762 F.3d at 1130 (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 453 (4th Cir. 2011)).

*Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 802 (8th Cir. 1987) ("Specific intent need not be proven by direct evidence, but can be inferred from the defendant's anticompetitive practices or other proof of unlawful conduct."); *Volvo North America Corp. v. Men's Int'l. Prof'l. Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988) (stating that specific intent to monopolize can be inferred from proof of "anticompetitive or exclusionary conduct"); *Penn. Dental Ass'n v. Med. Serv. Ass'n of Penn.*, 745 F.2d 248, 261 (3d Cir. 1984) ("Direct evidence of specific intent…may be inferred from predatory or exclusionary conduct.").

Here, GoDabo alleges both that THM Front Range and other Defendants had the specific intent to monopolize, Am. Compl. ¶¶ 21, 73, 76, 79, 81, 82, 83, 84, 87, 95, 98, but also that they specifically intended to destroy GoDabo as a competitor. *Id.* ¶¶ 40, 63, 78. Specifically, GoDabo pled facts which, taken as true, demonstrate that the Front Range Defendants made intentionally false or misleading statements about both their own business, and about GoDabo's business, and that these statements were used by Front Range Defendants as exclusionary devices to maintain their monopoly power. *Id.* at ¶¶ 21–38. Where a court concludes "that the fact-finder could reasonably infer monopoly power and exclusionary conduct . . . a jury could also find an intent to monopolize." *Lenox*, 762 F.3d at 1130. While GoDabo provides a plentiful factual record to support the existence of this specific intent, it is also clear under Fed. R. Civ. P. 9(b) that intent, which is a state of mind, "may be alleged generally."

### 5. *Conduct in Furtherance of an Attempt to Monopolize*

THM Front Range challenges this element on the basis that that "false and deceptive statements in advertising" about its own magazine and GoDabo's business cannot constitute anticompetitive conduct.

GoDabo incorporates in full its arguments above regarding its ability to overcome the presumption that false advertising is not anticompetitive.

**C. GoDabo Plead Sufficient Facts To State Its Third Claim For Relief: Violation of 15 U.S.C. § 2 – Conspiracy to Monopolize (Denver Market) – Against THM Front Range, Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith**

Burden of Proof: GoDabo agrees that it has the burden to prove this claim.

Elements: GoDabo agrees with Front Range Defendants' statement of the elements for this claim.

Elements at Issue:

**1. Antitrust Standing**

GoDabo incorporates in full its arguments above regarding antitrust injury.

**2. Conspiracy**

All Front Range Defendants challenge this element and argue that Defendants are incapable of engaging in a conspiracy because they constitute a single enterprise.

GoDabo asserted facts sufficient to establish the plausibility of conspiracy.

In general, *Copperweld* does not foreclose the possibility that a franchisor and franchisee may conspire. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) (holding only that a wholly owned subsidiary and its parent corporation could not conspire for purposes of the Sherman Act § 1). Later, the Supreme Court held that licensing activities for individual professional football teams' intellectual property, conducted through a corporation separate from the teams/franchisees and with its own management, constituted concerted action that was not categorically beyond the coverage of § 1 of the Sherman Act. A*m. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183 (2010). The key to *American Needle* was that the entities had distinct economic interests. *Id.* at 195.

GoDabo has sufficiently alleged facts supporting that the Front Range Defendants are, in fact, separate economic actors with distinct economic interests from each other and from the Campbell Defendants and are therefore capable of conspiring. Am. Compl. ¶¶ 78-84. For example:

- The ownership of THM, LLC and THM Holding differ from the ownership of Antsel Marketing, LLC. *Id.* ¶ 7; Ex. A at 1.

- THM, LLC has an economic interest in the success of the national franchise system (including TheHomeMag Front Range), because it is paid a franchise fee calculated as a percentage of its franchises overall revenues. Am. Compl. ¶ 79.

- THM Holding, on the other hand, had an independent interest in the creation and maintenance of monopoly power within each "protected" territory (including the Denver Market by THM Front Range) because it held an interest in the value of TheHomeMag mark, as well as operated numerous separate magazines under TheHomeMag mark. *Id.* ¶ 80.

- The individual owners and employees of Antsel Marketing, LLC have separate financial interests as well as their interests are in the profitability of their particular franchise in the Denver market. *Id.* ¶¶ 81–84.

In addition, and with regard to the Front Range Defendants in particular, the Tenth Circuit recognizes an exception to the intra-corporate doctrine where the employees of a corporation have an independent personal stake and thus stand to benefit from conspiring with the corporation to restrain trade. *Bell v. Fur Breeders Agricultural Co-op.*, 348 F.3d 1224, 1233 (10th Cir. 2003) (internal citations omitted). In this case, because of their sales commissions, the individual employees have a separate personal stake from the corporation.

On the other hand, if this Court concluded that the Front Range Defendants are incapable of conspiring with the each other or the Campbell Defendants, GoDabo will seek leave to amend its Complaint and add these Defendants to the § 2 monopolization claims pertaining to the Denver Market under the Tenth Circuit's analysis in *Lenox* wherein the Circuit Court concluded that entities that are subject to a *Copperweld* defense and unable to be held liable under a conspiracy claim may nevertheless be liable for § 2 monopolization or attempted monopolization claims under a single enterprise theory. *Lenox*, 847 F.3d at 1235. Moreover, a plaintiff need not prove that each affiliated defendant independently satisfies every element of the claims in order to be held liable, but rather the aggregate conduct must be scrutinized. *Id.* at 1236.

### 3. *Specific Intent to Monopolize*

All Front Range Defendants challenge this element. GoDabo incorporates in full its arguments above regarding the allegations of specific intent to monopolize.

### 4. *Overt Acts in Furtherance of the Conspiracy*

THM Front Range challenges this element and argues once again that false or misleading statements cannot constitute anti-competitive activity. GoDabo adequately pled this element.

First, GoDabo incorporates in full its arguments above regarding its ability to overcome the presumption that false advertising is not anticompetitive.

GoDabo pled additional facts specific to the conspiracy claim. These include collusion between the THM Franchisor and the Front Range Defendants to continue to direct the false and/or misleading disparagement at GoDabo despite the former's assurances "that this activity had ceased." Am. Compl. at ¶ 79. Moreover, GoDabo pled that THM Holding colluded with THM Franchisor (to the benefit of both, and the Front Range Defendants) to promulgate the false and/or misleading statements regarding Defendants own product. *Id.* at ¶ 80. Finally, GoDabo pled

allegations against each of the individual Front Range Defendants establishing overt actions they took in furtherance of the conspiracy and their motives for doing so. *Id.* at ¶¶ 81–84. Individually and collectively these facts meet GoDabo's pleading burden to set forth plausible facts to establish overt acts in furtherance of the conspiracy.

Therefore, Defendants adequately pled this element.

### D. GoDabo Plead Sufficient Facts to State Its Fourth Claim for Relief: Violation of 15 U.S.C. § 1 Related to the National Market Per Se (Or, in the Alternative, Under the Quick Look Test)

Burden of Proof: GoDabo agrees that it has the burden of proof on its *per se* claim, and adds the following clarification: if GoDabo proves that Defendants' conduct falls within a *per se* category, it is not necessary for GoDabo to prove that the conduct resulted in an unreasonable restraint on trade. *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1392 (10th Cir.1992). Alternatively, under an abbreviated, "quick look" rule-of-reason analysis, GoDabo must show that "the conduct at issue amounts to a 'naked' and effective restraint on price or output that carries 'obvious' anticompetitive consequences.'" *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1311 (10th Cir. 2017) (citations omitted). Then, "the burden in effect immediately shifts to the defendant to demonstrate countervailing procompetitive effects." *Id.*

Elements: GoDabo agrees that Front Range Defendants provide an accurate statement of the law regarding a section 1 violation generally. However, Front Range Defendants' analysis is fundamentally flawed because it fails to address the separate standard under a *per se* violation. "If plaintiff proves that defendant's conduct falls within one of these categories [that are conclusively presumed to be illegal], it is not necessary to prove that the conduct resulted in an unreasonable restraint on trade." *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F. Supp. 1503, 1508 (D. Colo. 1992), *aff'd*, 13 F.3d 366 (10th Cir. 1993).

Elements at Issue:

### 1. *Antitrust Standing*

GoDabo incorporates in full its arguments above regarding antitrust injury. With regard to its *per se* claim, GoDabo reiterates that it is not necessary to separately prove restraint on trade once a per se violation is established. *Smalley*, *supra*.

### 2. *Horizontal Restraint*

Front Range Defendants appear to challenge this element on the basis that the defendants are vertically, not horizontally, integrated and therefore cannot conspire pursuant to *Copperweld* nor can they establish a horizontal market allocation.

First, this is simply not a vertical restriction, which would be subject to a rule of reason analysis. Vertical restrictions result when companies at different market levels in the chain of distribution of a specific product, as between a manufacturer and distributor, conspire to restrain trade. *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F. Supp. 1503, 1510 (D. Colo. 1992), *aff'd*, 13 F.3d 366 (10th Cir. 1993). Here, GoDabo has sufficiently alleged the type of market allocation that is afforded *per se* treatment under *Sealy* and *Topco*. As discussed above and in GoDabo's Response to Campbell Defendants' Motion to Dismiss, incorporated herein, the entities alleged to have conspired are not wholly owned subsidiaries subject to a *Copperweld* defense.

"[A]n agreement to allocate or divide customers between competitors within the same horizontal market, constitutes a per se violation of § 1 of the Sherman Act." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990). This type of horizontal market division is precisely what the U.S. Supreme Court has singled out for *per se* treatment. In *U.S. v. Topco Associates, Inc.* the U.S. brought an action against a cooperative association of supermarket chains that had divided its member firms into exclusive marketing territories in which each could sell

Topco-branded products, in exchange for the agreement not to sell Topco-branded products outside of its area, which the Court found to be a *per se* violation. 405 U.S. 596 (1972). In *U.S. v. Sealy*, the U.S. brought an action against Sealy, which had agreed with its licensees (manufacturers of mattresses and bedding with the Sealy mark) not to license other manufacturers or sellers to sell Sealy-brand products in a designated territory in exchange for the promise of the licensee who sold in that territory not to expand its sales beyond the area demarcated by Sealy. 388 U.S. 350 (1967). A more recent example from the Northern District of Illinois is *Deslandes v. McDonald's USA, LLC*, in which the District Court concluded that a written franchise agreement requiring McDonald's franchisees to agree not to hire employees from other McDonald's restaurants— despite being "spearheaded by the entity at the top of the chain" and having "vertical elements"— was nonetheless a horizontal restraint. No. 17 C 4857, 2018 WL 3105955, at *6 (N.D. Ill. June 25, 2018) (attached hereto as Exhibit I).

GoDabo has sufficiently alleged facts supporting horizontal market allocation. GoDabo alleged that THM, LLC franchises TheHomeMag to at least 39 franchisees. Am. Compl. ¶¶ 3, 18. GoDabo also alleged that THM Holding operates ten company-owned businesses of the type THM, LLC franchises, operating under the TheHomeMag mark, *id.* ¶ 4, and THM of Ventura and The Home Improver together own several businesses of the type THM, LLC franchises, *id.* ¶ 5–6. These four entities have eliminated horizontal competition among these company-owned, affiliate-owned, and TheHomeMag franchisees within the direct mail home improvement advertising magazine market because each operates in its own "protected" territory. *Id.* ¶¶ 43–44. These businesses agree not to compete in another franchisee's territory. Ex. A at 31.

### 3. *National Market Definition*

As stated above, market definition includes a product market and geographic market, and a plaintiff must also make specific reference to the reasonable interchangeability of use or cross-elasticity of demand between the product and its substitutes.

While it is not strictly required for its *per se* claim, GoDabo has plead sufficient facts at this stage of the case to establish its National Market definition. In this case, GoDabo defines the product market as "targeted direct-mail home-improvement advertising magazine[s]." Am. Compl. ¶ 16. The analysis from above, concerning product definition, applies in full.

GoDabo defines the National Market geographically as "the entirety of the United States, and is an amalgamation of all metropolitan areas with sufficient demographics to support businesses operating in the Product Market." *Id.* ¶ 60. More specifically, GoDabo asserts that "TheHomeMag offers defined franchise territories for its franchisees because it is understood in the industry, and specifically by Defendants, that the appropriate geographic markets for its product is correctly broken down into metropolitan areas, such as the Denver metropolitan area," *id.* ¶ 59, and further that "several such metropolitan areas (e.g., Los Angeles) have been artificially divided into separate "protected territories," *id.* ¶ 60. *Accord Charles A. Ramsay Co. v. Associated Bill Posters of U.S. & Canada*, 260 U.S. 501, 510 (1923) (holding that an association of billposters that entered into a combination and conspiracy to monopolize the business in their respective localities and to dominate and control all trade and commerce in posters within such limits was nevertheless nationwide.)

This is far beyond "a cursory mention of a relevant product and geographic market." *Cf.* Ex. H, *Total Renal Care,* 2009 WL 2596493 at *7. GoDabo has clearly met its minimal burden to plead facts demonstrating this element. *See Christou*, 849 F. Supp. 2d at 1066 ("This Court agrees

with the sentiment of the Second Circuit, as well as other circuits, that '[b]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market.'").

### 4. Unreasonable Constraint of Trade

As discussed above, GoDabo is not required to plead this element under a *per se* violation.

### E. GoDabo Plead Sufficient Facts to State Its Fifth Claim for Relief: Violation of Sherman Act § 2 – Monopolization (National Market) – Against THM Front Range

Burden of Proof: GoDabo agrees it has the burden of proof for this claim.

Elements: GoDabo agrees with Front Range Defendants' statement of the elements for this claim.
Elements at Issue:

### 1. Antitrust Standing

GoDabo incorporates in full its arguments above regarding antitrust injury.

### 2. Monopoly Power

THM Front Range challenges this element on the basis that GoDabo has not supported its allegation that Defendants possess monopoly power in the relevant market and has failed to define the relevant market. GoDabo adequately plead this claim.

### a. Possession of Monopoly Power

GoDabo asserts that the Franchise Disclosure Document speaks for itself in terms of establishing THM Front Range's monopoly power in the national market. *See generally* Ex. A.

### b. Definition of National Market

GoDabo incorporates in full its argument above concerning its National Market definition.

### 3. *Willful Acquisition of Monopoly Power*

THM Front Range challenges this element on the grounds that a franchisor/franchisee relationship cannot form the basis of a monopoly claim. As discussed above, the Defendants involves in this claim have separate economic interests.

### F. *GoDabo Plead Sufficient Facts to State A Claim of Its Sixth Claim for Relief: Violation of 15 U.S.C. § 2 – Attempted Monopolization (National Market) – Against THM Front Range*

Burden of Proof: GoDabo agrees it has the burden of proof for this claim.

Elements: GoDabo agrees with Front Range Defendants' statement of the elements for this claim.

Elements at Issue:

### 1. *Antitrust Standing*

GoDabo incorporates in full its arguments above regarding antitrust injury.

### 2. *Relevant Market*

GoDabo incorporates in full its arguments above regarding the National Market definition.

### 3. *Probability of Monopolization*

GoDabo incorporates in full its arguments above regarding barriers to entry.

### 4. *Specific Intent*

GoDabo incorporates in full its arguments above regarding specific intent.

### 5. *Conduct in Furtherance of an Attempt*

THM Front Range challenges this element.

As discussed in the first section, trade disparagement may constitute an anti-trust injury. *Lenox*, 762 F.3d at 1127. GoDabo has sufficiently alleged facts meeting the Tenth Circuit's six-part test. Am. Compl. ¶¶ 21–42.

Moreover, as discussed above, GoDabo alleged that each of the named Defendants conspires to allocate the market, as well as participating in the false advertising. Am. Compl. ¶¶ 17, 43–44, 46, 60, 65; Ex. A at 1, 31, 40–41.

Finally, the Tenth Circuit permits a plaintiff to bring a § 2 monopolization or attempted monopolization claims under a single enterprise theory, and the plaintiff need not prove that each affiliated defendant independently satisfies every element of the claims in order to be held liable, but rather the aggregate conduct must be scrutinized *Lenox MacLaren Surgical Corp. v. Medtronic, Inc*., 847 F.3d 1221, 1236 (10th Cir. 2017). The aggregate conduct of all of the named Defendants, as pleaded, is more than sufficient to set forth a plausible issue of fact as to their conduct in furtherance of an attempt to monopolize the national market.

### G.  *GoDabo Plead Sufficient Facts to State Its Seventh Claim For Relief: Violation of 15 U.S.C. § 2 – Conspiracy to Monopolize (National Market) – Against THM Front Range*

Burden of Proof: GoDabo agrees it has the burden of proof for this claim.

Elements: GoDabo agrees with Front Range Defendants' statement of the elements for this claim.

Elements at Issue:

### 1.  *Antitrust Standing*

GoDabo incorporates in full its arguments above regarding antitrust injury.

### 2.  *Conspiracy*

THM Front Range challenges this element on the basis that it and the Campbell Defendants are not competitors and, therefore, cannot conspire as a matter of law.

As discussed above, *Copperweld* does not foreclose the possibility that a franchisor and franchisee may conspire, nor does it establish that all "affiliated" entities are a single enterprise for

the purpose of Section 2 monopolization claims. The key is whether the entities have distinct economic interests.

GoDabo has sufficiently alleged facts supporting that THM, LLC and THM Holding are, in fact, separate economic actors with distinct economic interests from each other and from the Front Range Defendants and are therefore capable of conspiring. Am. Compl. ¶¶ 78–84. The ownership of THM, LLC and THM Holding differ from the ownership of Antsel Marketing, LLC. *Id.* ¶ 7; Ex. A at 1. In particular, GoDabo pleaded that THM, LLC has an economic interest in the success of the national franchise system as well as specifically TheHomeMag Front Range, because it is paid a franchise fee calculated as a percentage of TheHomeMag Front Range's overall revenues. Am. Compl. ¶ 79. THM Holding, on the other hand, had an independent interest in the creation and maintenance of monopoly power within the Denver Market by THM Front Range because it held an interest in the value of TheHomeMag mark, as well as operated numerous separate magazines under TheHomeMag mark. *Id.* ¶ 80. The individual owners and employees of Antsel Marketing, LLC have separate financial interests as well. *Id.* ¶¶ 81–84.

On the other hand, if this Court would conclude that THM Front Range is incapable of conspiring with the Campbell Defendants, GoDabo will seek leave to amend its Complaint and add these Defendants to the § 2 monopolization claims pertaining to the National Market under the Tenth Circuit's recent analysis in *Lenox*.

### 3.  *Specific Intent*

GoDabo incorporates in full its arguments above regarding specific intent.

### 4.  *Overt Acts*

GoDabo incorporates in full its arguments above regarding conduct in furtherance of an attempt to monopolize.

**H. GoDabo Plead Sufficient Facts to State Its Eighth Claim For Relief: Violation of The Lanham Act Section 43(a), 15 U.S.C. § 1125(a) – Against Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith**

Burden of Proof: GoDabo agrees that it has the burden of proof for this claim.

Elements: GoDabo agrees with Front Range Defendants' statement of the elements for this claim.

Elements at Issue:

**1. Materially False or Misleading Representations**

Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith challenge this element on the basis that the statements were not literally false.

"Section 43(a) ... encompasses more than literal falsehoods." *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.,* 638 Fed. App'x 778, 784 (10th Cir. 2016) (internal citations omitted). "More specifically, the Lanham Act contemplates two variants of actionable advertising representations: (1) those that are literally false, and (2) those that, while literally true, are likely to mislead and confuse consumers." *Id.* at 785.

GoDabo alleged sufficient facts which, if true, establish this element. Am. Compl. ¶¶ 21–42. As discussed previously, GoDabo alleged that the statements contained in the July and August emails and the TheHomeMag Front Range media kit are false because, *inter alia*, (a) the issue was in the mail on July 5, 2018, despite the claim on July 5, 2018 that "GoDabo has not yet mailed the issue," and (b) the postage was paid on June 26, 2018, despite the claim on July 5, 2018 that "he has not paid the Post Office," (c) TheHomeMag Front Range's mailing list is not "handpicked" despite the claim in the August 31, 2018 email, (d) GoDabo does not "saturate zipcodes" despite the claim in the August 31, 2018 email, because it carefully selects a list of mailing recipients, (e) the average net worth of TheHomeMag Front Range reader is not $1.73 million despite the claim

in the media kit, and (f) 72% of the TheHomeMag readers do not frequently purchase products or services from ads in TheHomeMag, despite the claim in the media kit. *Id.* ¶¶ 23–24, 35–37; *see also* Ex. B (July 5, 2018 email); Ex. C (proof of mailing); Ex. D (media kit).

These facts, taken in the light most favorable to GoDabo, establish this element. *Beltran*, 176 F. Supp. 3d at 1079.

### 2.  *Affecting Commerce*

GoDabo incorporates in full its argument above regarding the interstate commerce nexus. *See also* Am. Compl. ¶ 14.

### 3.  *Confusion Or Mistake As To Characteristics of Goods or Services*

Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith challenge this element.

"If the plaintiff shows literal falsity, the third element is presumed established; for statements that are not literally false, the plaintiff must show that they tend to mislead or confuse the relevant market." *Cocona, Inc. v. Singtex Indus. Co.*, No. 14-CV-01593-MJW, 2014 WL 5072730, at *8 (D. Colo. Oct. 9, 2014) (attached hereto as Exhibit J) (citing *Zoller Labs., LLC v. NBTY, Inc.*, 111 Fed. Appx. 978, 982 (10th Cir. 2004)).

GoDabo alleged sufficient facts which, if true, establish this element. As discussed directly above, GoDabo alleged facts that support literal falsity, therefore it does not need to establish that the statements misled or confused the relevant market.

Nevertheless, GoDabo has alleged facts that, if true, would allow a reasonable fact finder to conclude that these statements influenced customers not to purchase GoDabo's products. *Compare Century Martial Arts Supply Inc. v. National Assn. of Professional Martial Artists*, 129 Fed. Appx. 421, 427 (10th Cir. 2005) (affirming jury verdict on somewhat similar facts, finding that customer's testimony about electing not to do business with plaintiff after defendant published

misleading comparisons between the two businesses sufficed to demonstrate causation and damages). These facts include that "based on the timing of numerous cancelled sales and statements of Defendants related to GoDabo by contractors, at least 22 (and likely many more) contractors have decided not to advertise with GoDabo, or have cancelled ongoing advertisements with GoDabo, as a direct and proximate result of Defendants' false statements." Am. Compl. ¶ 40. In addition, GoDabo alleged that statements about the reliability of GoDabo are "likely to prevent customers from switching toward that uncertainty, and to instead adopt a 'wait and see' attitude where customers are more hesitant to be early adopters of a new alternative." *Id.* ¶ 42. Finally, GoDabo alleged that these statements were intended to reach GoDabo's customers and actually deceived a substantial portion of their intended audience. *Id.* ¶¶ 103–104.

### 4. *Injury to Plaintiff*

Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith challenge this element.

"A plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[, which] occurs when deception of consumers causes them to withhold trade from the plaintiff." Intermountain Stroke, 638 Fed. App'x at 791 (citation omitted); *accord Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014) ("We thus hold that to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales.")."The Tenth Circuit, following the Second and Eighth Circuits, has said that courts may presume injury when the parties are "obvious competitors" with respect to the service being misrepresented." *Berken v. Jude*, No. 12-CV-02555-RPM, 2013 WL 6152347, at *2 (D. Colo. Nov. 22, 2013) (attached hereto at Exhibit K) (*citing Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000)).

GoDabo alleged sufficient facts which, if true, would amount to economic or reputational injury. GoDabo alleged that seven contractors broke off their contracts with it following the email of July 5, 2018, resulting in the loss of many thousands of dollars of advertising revenue. Am. Compl. ¶¶ 26–32. GoDabo also alleged that at least 22 (and likely many more) contractors have decided not to advertise with GoDabo, or have cancelled ongoing advertisements with GoDabo, as a direct and proximate result of Defendants' false statements. *Id.* ¶ 40. Finally, GoDabo alleged that this has caused hundreds of thousands of dollars in lost revenue to GoDabo and very likely will destroy GoDabo as a going concern. *Id.* These allegations are sufficient to demonstrate injury at the motion to dismiss stage. *See, e.g., Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1061 (D. Colo. 2017) ("Dawgs has pled facts to support its argument that Crocs has advertised its products using the term 'Croslite,' that its descriptions of Croslite were false, and that those descriptions have misled consumers about Dawgs' products.").

**I.  *GoDabo Plead Sufficient Facts to State Its Ninth Claim For Relief: Violation of C.R.S. § 6-1-101, et seq. - Violation of the Colorado Consumer Protection Act – Against THM Front Range, Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith***

Burden of Proof: GoDabo agrees that it has the burden of proof for this claim.

Elements: GoDabo agrees with Front Range Defendants' statement of the elements for this claim. *See Wilson v. AdvisorLaw LLC*, No. 17-CV-1525-MSK, 2018 WL 858738, at *4 (D. Colo. Feb. 14, 2018) (attached hereto as Exhibit L).

Elements at Issue:

**1.  *Unfair or Deceptive Trade Practice***

All Front Range Defendants challenge this element on the basis that the statements are not actionable under *Warner v. Ford Motor Co*., No. 06CV02443-JLK-MEH, 2008 WL 4452338, at *8–9 (D. Colo. Sept. 30, 2008) (attached hereto as Exhibit M).

The CCPA defines "deceptive trade practice" to include "[disparaging] the goods, services, property, or business of another by false or misleading misrepresentations of fact" and "[failing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. §§ 6-1-105(h) and (u). The Colorado Supreme Court has further defined an actionable misrepresentation under the CCPA as a "false statement of fact that either induces the recipient to act or has the capacity to deceive the recipient that is made either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Rhino Linings*, 62 P.3d at 144, 147 (internal quotation marks omitted).

GoDabo sufficiently alleged a deceptive trade practice under the CCPA. GoDabo incorporates its above discussion regarding its ability to overcome the presumption that false advertising is not anticompetitive.

Moreover, as also discussed above, Front Range Defendants' statements do not amount to "puffery" as they are not simply exaggerated opinion. *Cf. Warner*, 2008 WL 4452338, at *8–9 ("Ford's slogans and statements regarding the quality and "toughness" of its vehicles amount to mere puffery as a matter of law. They are exaggerated opinion, rather than representations of fact, because they are extremely general, not directed at any specific attribute of Ford vehicles and are not representations of fact subject to measure."). Rather, all of the statements highlighted by GoDabo can be conclusively proved either true or false.

### 2. Impacts Public

Front Range Defendants challenge this element on the basis that indirect impact on the public is insufficient to assert a claim under the CCPA.

> [W]hether a challenged practice significantly impacts the public within the context of a CCPA claim depends on: (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.

*Rhino Linings*, 62 P.3d at 149 (internal quotation marks omitted).

GoDabo has plainly alleged every element of public impact as required under the CCPA. GoDabo has plainly alleged every element of public impact as required under the CCPA. GoDabo alleges that "[t]he deceptive trade practices directly impacted several hundred to over one thousand home-improvement contracting businesses in the Denver metro area." Am. Compl. ¶ 109. GoDabo also alleges that the sophistication and bargaining power of these consumers militates in favor of a viable CCPA claim, stating that "these consumers are small-business or sole practitioners, not represented by counsel in these transactions, and where the transactions in question (purchasing of advertising) lie outside their area of specialty and they are therefore relatively unsophisticated under these circumstances." Id. ¶ 110. GoDabo also alleges that the challenged conduct has previously impacted "over 200,000" homeowners, and threatens to continue doing so in the future. Id. ¶¶ 112, 111.

This is precisely the type of consumer-related impact required for a CCPA claim. Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998). These were not misrepresentations made in a private transaction between GoDabo and TheHomeMag. *Cf. Netquote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1137 (D. Colo. 2007); *Gates Corp. v. Dorman Prod., Inc*., No. 09-cv-02058-CMA-KLM, 2010 WL 381853, at *3 (D. Colo. Jan. 22, 2010) (attached hereto as Exhibit ).

***J.   This Court Should Exercise Supplemental Jurisdiction Over GoDabo's Remaining Claims Against Front Range Defendants***

<u>Burden of Proof</u>: GoDabo agrees with Front Range Defendants' statement of the burden of proof for establishing supplemental jurisdiction.

<u>Elements</u>: GoDabo agrees with Front Range Defendants' statement of 28 U.S.C. § 1367(c) and adds that § 1367(a) provides that, except as expressly provided elsewhere, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

<u>Elements at Issue</u>:

Front Range Defendants do not argue that GoDabo's state law claims and federal claims do not share a nexus of fact. Instead they challenge supplemental jurisdiction solely on the ground that supplemental jurisdiction over the state law claims will not exist if all of GoDabo's federal claims are dismissed. Conversely, if the Court denies Front Range Defendants' motion to dismiss with regard to any of GoDabo's federal claims, then this Court properly has supplemental jurisdiction over the state law claims.[7] Therefore, based on the above reasoning incorporated herein in full, the Court should exercise supplemental jurisdiction over GoDabo's state law claims and Front Range Defendants have submitted to such jurisdiction.

---

[7] In the event that this Court would dismiss all federal claims against the Front Range Defendants but retain any federal claims against any other Defendants, GoDabo asserts that a sufficient nexus of fact exists to warrant continued exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a).

## III. CONCLUSION

WHEREFORE, GoDabo respectfully requests that the Court deny the Front Range Defendants' Motion to Dismiss its First Amended Complaint in full.

Respectfully submitted this 1st day of March, 2019.

GODFREY | JOHNSON, P.C.

/s/ Jeffrey S. Vail
Brett Godfrey
Jeffrey S. Vail
Lily Nierenberg
9557 South Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax:    (303) 228-0701
Email:  godfrey@gojolaw.com
Email:  vail@gojolaw.com
Email:  nierenberg@gojolaw.com

## CERTIFICATE OF SERVICE

I hereby certify I have served the foregoing upon the parties hereto via CM/ECF – U.S. District Court filing, this 1st day of March, 2019.

James D. Kilroy, Esq.
Ellie Lockwood, Esq.
Snell & Wilmer, LLP-Denver
1200 17th Street, One Tabor Center
Suite 1900
Denver, CO  80202
Phone:  (303) 634-2000
Fax:      (303) 634-2020
Email:  jkilroy@swlaw.com
Email:  elockwood@swlaw.com
Attorneys for Defendants Antsel Marketing, LLC, Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith

Thomas B. Quinn, Esq.
Jacqueline R. Guesno, Esq.
Gordon Rees Scully Mansukhani, LLP
555 Seventeenth Street, Suite 3400
Denver, CO  80202
(303) 534-5154
Email:  tquinn@grsm.com
Email:  jguesno@grsm.com
Attorneys for THM Management, LLC d/b/a TheHomeMag, The Home Mag Holding Company, LLC, Campbell Wiener, Inc. d/b/a THM of Ventura, and The Home Improver, LLC

GODFREY | JOHNSON, P.C.

/s/ Jeffrey S. Vail
Brett Godfrey
Jeffrey S. Vail
Lily Nierenberg
9557 South Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax:     (303) 228-0701
Email:  godfrey@gojolaw.com
Email:  vail@gojolaw.com
Email:  nierenberg@gojolaw.com