# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02672-MSK

GDHI MARKETING, LLC D/B/A GODABO HOME AND LIFE,

    Plaintiff,

v.

ANTSEL MARKETING, LLC D/B/A THEHOMEMAG FRONT RANGE,
THM MANAGEMENT, LLC D/B/A THEHOMEMAG,
THE HOME MAG HOLDING COMPANY, LLC,
CAMPBELL WIENER, INC. D/B/A/ THM OF VENTURA,
THE HOME IMPROVER, LLC,
CLAIRE LINDSAY,
ANNIE MULLEN,
BARBARA ROBLES,
ELLEN SMITH,

    Defendants.

## DEFENDANT THE HOME IMPROVER'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant, The Home Improver, LLC ("The Home Improver"), through its attorneys, Gordon Rees Scully Mansukhani, LLP, submits this Reply in Support of its Motion to Dismiss [Doc. 41].

## ARGUMENT[1]

As addressed in The Home Improver's Motion to Dismiss, plaintiff fails to properly state antitrust claims under the Sherman Act. In further support of its strawman argument, plaintiff

---

[1] The Home Improver incorporates by reference Anstel Marketing, LLC's Reply in Support of its Motion to Dismiss to any and all claims for relief asserted against The Home Improver.

repackages its original conclusory allegations.[2] Plaintiff's Response, however, does not remedy its numerous fatal pleading defects, but instead confirms that its antitrust claims must be dismissed.

1. <u>Plaintiff Fails to Allege Anti-Competitive Conduct.</u>

Section 2 of the Sherman Act prohibits monopolies in interstate trade or commerce, as well as attempts or conspiracies to monopolize. 15 U.S.C. § 2. Plaintiff has alleged a conspiracy to monopolize, attempted monopolization, and actual monopolization against The Home Improver. "These causes of action require proof of conduct in furtherance of the [monopoly] or conspiracy, which conduct must be anti-competitive." *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1284-85 (D. Kan. 1997). Anti-competitive conduct is "conduct constituting an abnormal response to market opportunities." *Instructional Sys. Dev. Corp. v. Aetna Cas. and Sur. Co.*, 817 F.2d 639, 649 (10th Cir. 1987). Anti-competitive acts violate the Sherman Act if "they impair opportunities of rivals and are not competition on the merits or are more restrictive than reasonably necessary for such competition" and they "appear reasonably capable of contributing significantly to creating or maintaining monopoly power." *Id*.

The U.S. Court of Appeals for the Tenth Circuit presumes that false statements bear only a *de minimis* effect on competition. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1127 (10th Cir. 2014) (noting that the de minimis presumption applies to disparagement claims). In order to rebut this presumption, plaintiff must show that the false statements are clearly false, clearly material, and clearly likely to induce reasonable reliance.[3] *Id*; *see also Mercatus*

---

[2] Plaintiff's attempt to provide its own interpretation of defendants' relationship to each other is improper and misleading. (*See* Response, p. 3).

[3] While this is a six-factor test, The Home Improver and plaintiff do not address factors four through six for the purposes of this Motion.

*Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 852 (7th Cir. 2011) ("[C]laims based on one competitor's disparagement of another should presumptively be ignored. . . . [A]bsent an accompanying coercive enforcement mechanism of some kind, even demonstrably false commercial speech is not actionable under the antitrust laws.").

In the Response, plaintiff conclusory states that statements are false, that "the statements are material because they actually influenced buying decision" and "that they were likely to induce reasonable reliance". [Response, p. 9]. However, plaintiff provides no support for these allegations. As addressed in The Home Improver's Motion, the contents of the July 5, 2018 email were not false by plaintiff's own admission. Further, plaintiff takes issue with the media kit's statement regarding the "average net worth of TheHomeMag reader constituting $1.73 million." This is not a material misstatement on its own leading to anticompetitive conduct. [*See* February 22, 2019 Order, Doc. 54, p. 8]. Additionally, plaintiff provides no basis for its remaining allegations. Therefore, plaintiff fails to overcome the rebuttable presumption for pleading anticompetitive conduct under the Sherman Act.

2. Plaintiff fails to Allege a Relevant Product Market.

Businesses are free to use tactics to gain competitive advantage, such as exclusive dealing agreements. The key question in antitrust cases is whether those tactics are used to control, rather than to compete in, the market. Defining a relevant product market is a necessary threshold requirement for all of plaintiff's Section 2 anti-trust claims. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 893 (10th Cir. 1991). However, plaintiff fails to plead facts satisfying the "plausibility" threshold for a product market. As addressed in The Home Improver's Motion, plaintiff narrowly defines its product market as "targeted direct-mail home-improvement

3

advertising magazine" and excludes direct competitors like Team Dave Logan's Playbook and Quality Connection, without any explanation. *Adidas Am., Inc. v. Nat'l Collegiate Athletic Ass'n*, 64 F. Supp. 2d 1097, 1102 (D. Kan. 1999) ("An antitrust plaintiff may not define a market to cover only the practice complained of, this would be circular or at least result-oriented reasoning."); *Tanaka v. University of S. Cal*, 252 F.3d 1059, 1062-63 (9th Cir. 2001) (affirming dismissal of action where plaintiff attempted to restrict the relevant market to a single athletic program in Los Angeles); *see also Int'l Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904 (6th Cir. 1989) (manufacturer cannot be charged with antitrust violations if it monopolizes its own brand).

In its Response, plaintiff simply repeats its deficient "relevant market" allegations and asserts that market definition is a question of fact. [*See* Response, p. 13]. However, the law is clear: A plaintiff must plead facts to support its market definition; if not, the complaint will be dismissed. *See, e.g., Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008) (upholding Rule 12(b)(6) dismissal of antitrust claims where alleged market was under-inclusive because it did not contain total market demand). Further, plaintiff's attempt to quote the Franchise Disclosure Document in order to meet its burden is irrelevant. *See Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 919 (6th Cir. 2009) (Internal marketing documents do not provide a sound economic basis for assessing the market "the way that a proper interchangeability test would."). Accordingly, plaintiff fails to plead a proper product market under the Sherman Act.

    3. <u>Plaintiff Fails to Allege a National Geographic Market.</u>

A geographic market is the "area of effective competition," and must include all geographic areas to which "a potential buyer may rationally look for … goods or services". *Lantec, Inc. v.*

*Novell, Inc.*, 306 F.3d 1003, 1026 (10th Cir. 2002); *Pennsylvania Dental Ass'n v. Medical Serv. Ass'n*, 745 F.2d 248, 260 (3d Cir. 1984); *Bathke v. Casey's General Stores, Inc.,* 64 F.3d 340, 345 (8th Cir. 1995) ("The geographic market encompasses the geographic area to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition."). If a plaintiff fails to plead a factual basis to support the alleged geographic market- and instead merely makes "cursory" mention of the alleged geographic market in the complaint, dismissal is required. *Total Renal Care, Inc. v. W. Nephrology and Metabolic Bone Disease, P.C.*, 2009 WL 2596493, at *7 (D. Colo. Aug 21, 2009).

As addressed in The Home Improver's Motion, the nature of this business does not rise to a national market because contractors are not seeking to reach customers outside the specific metropolitan area and vice-versa. *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1027 (10th Cir. 2002) ("The geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product.") (internal citations omitted); *It's My Party v. Live Nation, Inc.*, 811 F.3d 676 (4th Cir. 2016) (the "inquiry focuses on the area within which [buyers] can find alternative [sellers] if any one [seller] were to increase its prices"). Plaintiff provides no allegation to the contrary in its Amended Complaint or in its Response. Rather, plaintiff cites to *Ramsay Co. v. Bill Posters Ass'n,* 260 U.S. 501, 510 (1923) in support of its national market designation. However, as compared to the plaintiffs in *Ramsay*, plaintiff neither alleges, nor can it allege, that it conducts business in several states or that its customers are based in several states. As such, plaintiff's claims based on any purported national market fail.

    4. <u>Plaintiff Fails to Sufficiently Allege a Conspiracy.</u>

Despite its assertions to the contrary, plaintiff's allegations against The Home Improver are insufficient to sustain an inference of a conspiracy or The Home Improver's participation in such a conspiracy. Plaintiff bears the burden of pleading factual allegations that are more than just vague or conclusory assertions of an illegal agreement. Here, however, plaintiff has not pleaded facts that raise an inference of The Home Improver's participation in or agreement to an unlawful conspiracy. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

In determining whether entities are competitors for a conspiracy claim, their relationship to each other is the critical factor, not the alleged effect of an arrangement. *Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730-31 n.4 (1988). Here, The Home Improver and other named entity-defendants are not competitors. Plaintiff's Response admits that the entities are franchises, but then attempts to create a competition by asserting different financial interest. [*See* Response, p. 11]. However, this is improper. *See Williams v. I.B. Fischer Nev.*, 794 F. Supp. 1026, 1030–32 (D. Nev. 1992) (restaurant franchisor and franchisee incapable of conspiracy, since franchisor had complete control over franchisee's operational decisions and they had common economic goals, even though franchisor did not have any ownership of franchisee), aff'd, 999 F.2d 445, 447 (9th Cir. 1993); *see also Kramer v. Pollock-Krasner Foundation*, 890 F. Supp. 250, 256 (S.D.N.Y. 1995) (while the plaintiff "may believe the defendants conspired ..., the defendants' allegedly conspiratorial actions could equally have been prompted by lawful, independent goals which do not constitute a conspiracy").[4]

---

[4] Plaintiff alternatively seeks leave to amend. The Court should deny leave to amend as plaintiff has already received two bites at the apple and still cannot allege an antitrust claim. Accordingly, plaintiff's antitrust claims should be dismissed with prejudiced, and without leave to amend.

Further, plaintiff fails to allege an overt act. Indeed, the Amended Complaint contains no allegation that The Home Improver made any false statements or engaged in any false advertising. Rather, the Amended Complaint conclusory alleges that THM, LLC's July 16, 2018 email in response to Plaintiff's cease and desist letter was false and that it was conspiring to maintain a monopoly power within the market. There is no allegation that The Home Improver was involved in these correspondence or took any overt acts. Furthermore, there is no allegation that The Home Improver has any involvement whatsoever in the media kit that allegedly possesses false advertising. Accordingly, Plaintiff has not adequately alleged that The Home Improver has conspired in violation of the Sherman Act and the claim should be dismissed.

5. Plaintiff Fails to Allege a Per Se Violation.

Plaintiff insists that the Franchise Disclosure Document establishes a horizontal relationship and thus subject to the per se rule, despite hornbook law that an agreement is not horizontal under Section 1 of the Sherman Act unless the parties to it are competitors. *See, e.g., Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 2011 WL 1044898, at *2 (S.D.N.Y. Mar. 10, 2011) ("To establish a per se claim under the Sherman Act, a plaintiff must plead facts establishing that the parties to the alleged agreement have a horizontal relationship, that is, that the agreement is between competitors.").

As admitted by plaintiff, The Home Improver's relationship to the other entity-defendants is that of franchisor-franchisee. As such, it is a vertical agreement. *See Bel Canto*, 2012 WL 2376466, at *8 ("[A]greements between persons at different levels of a market structure, for example between manufacturer and distributor or between franchisor and franchisee-referred to as 'vertical restraints'-are analyzed under the [so-called] rule of reason."). As such, any bilateral

7

agreement between The Home Improver and the other entity-defendants is not horizontal and plaintiff has failed to properly allege otherwise. *See Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) ("Because State Farm and Lynx are not competitors-they do not operate at the same market level-their cooperation cannot constitute a price fixing, group boycott, or exclusive dealing arrangement sufficient for a per se violation of the Sherman Act."); *Texaco Inc. v. Dagher*, 547 U.S. 1, 5-6 (2006) (holding that defendants could not have entered into per se unlawful horizontal price-fixing agreement because "they did not compete with one another in the relevant market").

Plaintiff's attempt to fall back on the rule of reason also fails.[5] "Rule of reason analysis first asks whether the offending competitor . . . possesses market power in the relevant market where the alleged anticompetitive activity occurs." *Helmeric & Payne Int'l Drilling Co. v. Schlumberger Tech Crop.*, 2017 WL 6597512 (N.D. Ok. Dec. 26, 2017) (*citing SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 965 (10th Cir. 1994)). As discussed above, plaintiff fails to define a proper product and geographic market. Accordingly, plaintiff's per se claim also fails and should be dismissed.

6. <u>Plaintiff Fails to Allege a Dangerous Probability of The Home Improver's Success in Monopolizing the National Market.</u>

The first requirement of any attempted monopolization claim is that there be a dangerous probability that the defendant will be able to acquire monopoly power through its alleged misconduct. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993) (a firm "may not be liable for attempted monopolization under § 2 of the Sherman Act absent proof of a dangerous

---

[5] The Home Improver also submits that this alternative theory is improper as plaintiff never alleged the rule of reason in its Amended Complaint.

probability that [it] would monopolize a particular market"). Dangerous probability "means the probability of attaining power to control prices in the market and the power to exclude competition from the market." *Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.*, 783 F.2d 159, 162, 164 (10th Cir. 1986).

Here, there is no real possibility that The Home Improver had the power to exclude Plaintiff from the market as not only does it not conduct business in Colorado, but also, Plaintiff states that upon publication in January 2018, it reached 2 million publications and 19% market share within a brief period of time. [Doc. 21, ¶¶ 55, 62-63]. This defeats an attempted monopolization claim as there is no significant barriers to market entry. *See* Nat'l Ass'n of Investors Corp. v. Bivio, Inc., No. 11-CV-02435-WJM, 2013 WL 316021, at *6 (D. Colo. Jan. 28, 2013) (dismissing attempted monopolization claim when contradictory allegations precluded plaintiff's ability to sufficiently plead the elements of such a claim).

7. <u>This Court Lacks Personal Jurisdiction Over Plaintiff's Antitrust Claims Regarding The Home Improver.</u>

If this Court were to adopt the plaintiffs' universal personal jurisdiction theory, it would eliminate constitutional protection for every corporation against which an antitrust claim is asserted. *See e.g., Smith v. Montgomery Ward & Co., Inc.*, 567 F.Supp. 1331 (D. Colo. 1983) (holding nationwide service of process provision still requires the satisfaction of minimum contacts due process requirement of Int'l Shoe).

The United States Supreme Court has developed a tripartite inquiry to determine whether a defendant purposefully directed its activities at a forum state: the presence of (a) an intentional act that was (b) aimed expressly at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The U.S. Court of

Appeals for the Tenth Circuit has interpreted the "express aim" element to signify that "the forum state itself must be the 'focal point'" of the tort. *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995)); *see also Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1191 (D. Colo. 2004).

Here, The Home Improver is headquartered in Florida, it neither has contacts with Colorado nor does it transact any business with Colorado. Indeed, Plaintiff's Response and Amended Complaint make no allegations that The Home Improver expressly aimed any actions at Colorado in order to justify personal jurisdiction. As such, this Court should dismiss all antitrust claims against The Home Improver for lack of jurisdiction.

DATED: March 29, 2019

Respectfully submitted,

GORDON REES
SCULLY MANSUKHANI, LLP

*/s/ Thomas B. Quinn*
Thomas B. Quinn
Jacqueline R. Guesno
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Phone: (303) 534-5154
tquinn@grsm.com
jguesno@grsm.com

*Attorney for Defendant
The Home Improver, LLC*

## CERTIFICATE OF SERVICE

I certify that on this 29th day of March, 2019, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such to the following:

Jeffrey S. Vail
Brett M. Godfrey
Godfrey Johnson, P.C.
9557 South Kingston Court
Englewood, CO 80112
303-228-0700
Email: vail@gojolaw.com
       godfrey@gojolaw.com
***Attorney for Plaintiff GDHI Marketing, LLC***

James D. Kilroy
Ellie Lockwood
Snell & Wilmer, LLP-Denver
1200 17th Street, One Tabor Center
Suite 1900
Denver, CO 80202
303-634-2000
Email: jkilroy@swlaw.com
       elockwood@swlaw.com
***Attorneys for Defendants Antsel Marketing, LLC,***
***Claire Lindsay, Annie Mullen, Barbara Robles,***
***and Ellen Smith***

                  */s/ Kelly M. Trease*
                  For Gordon Rees Scully Mansukhani, LLP