**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02672-MSK-NRN

GDHI MARKETING, LLC D/B/A GODABO HOME AND LIFE,

    Plaintiff,

v.

ANTSEL MARKETING, LLC D/B/A THEHOMEMAG FRONT RANGE,
THM MANAGEMENT, LLC D/B/A/ THEHOMEMAG,
THE HOME MAG HOLDING COMPANY, LLC
CAMPBELL WIENER, INC., D/B/A THM OF VENTURA
THE HOME IMPROVER LLC
CLAIRE LINDSAY,
ANNIE MULLEN,
BARBARA ROBLES,
ELLEN SMITH,

    Defendants.

---

**DEFENDANTS ANSTEL MARKETING, LLC, CLAIRE LINDSAY,
ANNIE MULLEN, BARBARA ROBLES, AND ELLEN SMITH'S
REPLY IN SUPPORT OF MOTION TO DISMISS [# 42]**

---

Defendants Anstel Marketing, LLC (incorrectly named Antsel Marketing, LLC d/b/a TheHomeMag Front Range by Plaintiff), Claire Lindsay, Annie Mullen, Barbara Robles, and Ellen Smith (the "Anstel Defendants"), through undersigned, respectfully submit this Reply in Support of their Motion to Dismiss Plaintiff's First Amended Complaint (# 42).[1]

---

[1] The Anstel Defendants incorporate the arguments raised in The Home Mag Holding Company, LLC's Reply in Support of its Motion to Dismiss (# 61) to further support this Reply and dismissal of the Amended Complaint.

## **REPLY STATEMENT**[2]

Plaintiff's Amended Complaint must be dismissed because "it does not plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's Response (# 57) does not cure Plaintiff's dispositive pleading deficiencies. The bottom line is that Plaintiff's "[t]hreadbare recitals" of the elements for its claims "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also L-3 Commc'ns Corp. v. Jaxon Eng. & Maint., Inc.*, 2013 WL 1231908, at *3 (D. Colo. Feb 25, 2013); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1027 (10th Cir. 1992) ("The use of antitrust 'buzz words' does not supply the factual circumstances necessary to support … conclusory allegations."). Thus, for the reasons articulated below and in the Anstel Defendants' Motion to Dismiss (# 42), the Court should dismiss Plaintiff's Amended Complaint in full.[3]

### I. **All Seven of Plaintiff's Antitrust Claims Should Be Dismissed.**

A. <u>Plaintiff failed to allege antitrust injury</u>. Plaintiff was required to allege harm to competition, not just its own business. *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 965 (10th

---

[2] Plaintiff attached nearly 300 pages of extraneous information to its Response (# 57), including an affidavit from its representative. As a general rule, the Court cannot consider documents outside the pleadings on a motion to dismiss without converting the motion to one for summary judgment. *See Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). The Anstel Defendants respectfully request that the Court disregard the documents Plaintiff submitted with its Response, rather than turning the Motion into one for summary judgment.

[3] Plaintiff suggests in its Response that the Anstel Defendants have "concede[d]" certain facts, including "the accuracy of GoDabo's allegation[s]." #57, at 11. Plaintiff then attempts to rely on those purported concessions to support its claims. *Id.* Plaintiff is mistaken—the Anstel Defendants have conceded nothing. Rather, the Anstel Defendants properly assumed (just as this Court will), for purposes of their Motion to Dismiss, that the facts alleged in the Amended Complaint are true. *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1215 (D. Colo. 2012) (citations omitted).

Cir. 1994). Plaintiff failed to allege any reduction in competition or increase in pricing based on Defendants' purported conduct. *See* # 21, ¶ 65. Plaintiff did not allege that "the complained-of conduct" has a "tendency, for example, to decrease the number of competitors (either through barriers to entry or practices that drive competitors out of the market) or to reduce the incentive for competitors to compete with each other." *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, 2016 WL 8416760, at *6 (D. Colo. July 13, 2016) (citation omitted). The only identifiable injury of which Plaintiff complains is specific to Plaintiff, and not an injury to competition in general. *See Crocs, Inc. v. Australia Unlimited, Inc.*, 2008 WL 4426170, at *3 (D. Colo. Sept. 25, 2008); *see* # 21, ¶ 6.

      B.      <u>Plaintiff improperly defined the relevant market.</u>  Plaintiff was required to, but did not, include in its market definition all products that are reasonably interchangeable. *Sales & Advertising Promotion, Inc. v. Donrey, Inc.*, 598 F. Supp. 538, 548 (N.D. Okla. 1984) (citation omitted). Plaintiff has too narrowly defined the market to exclude several comparable companies that both Plaintiff and the Anstel Defendants compete against, including Team Dave Logan's "Playbook" and Quality Connection. # 21, ¶¶ 49-50. Nor did Plaintiff sufficiently allege that the Anstel Defendants have the power to control prices and to unreasonably restrict competition. Rather, based on Plaintiff's allegations, Plaintiff was able to secure a substantial portion of the market share—nearly 20%—in just a few months of entering the Denver market. # 20, at ¶ 63. As a result, the success Plaintiff has had undercuts any claim that there are barriers to entry as a result of illegal or improper conduct by Defendants.

In addition, Plaintiff has not alleged any facts that would allow the Court to find that Defendants have the power or ability to control prices or to exclude competition in the National

3

Market." *United States v. DuPont*, 351 U.S. 377, 403-04 (1956). Indeed, Plaintiff is not a participant in the "National Market," and thus has no standing to pursue its National Market-based claims. *See Elliot Indus. Ltd P'ship v. BP America Prod. Co.*, 407 F.3d 1091, 1125 (10th Cir. 2005) (requiring that "the injured party be a participant in the same market as the alleged malefactors"). Plaintiff also was required, but failed, to set forth facts to establish "specific intent" and "dangerous probability," such as the amount of Defendants' market share in the relevant markets, the number and strength of other competitors in the markets, the markets' trends, and barriers of entry of new competitors in the markets. *See Crocs*, 2008 WL 4426170, at *4.

Critically, Plaintiff's Amended Complaint does not sufficiently allege that the Anstel Defendants possess monopoly power in the relevant market—Denver or National. Based on Plaintiff's Amended Complaint, within just months of Plaintiff entering the Denver market, it acquired nearly 20% of the market share. This establishes the absence of any barriers to entry or monopoly power. Further, based on the Amended Complaint, the Anstel Defendants only advertise in Denver metropolitan market and are not participants in Plaintiff's "National Market." In light of these facts, Plaintiff has not sufficiently defined the relevant market for antitrust purposes.

C.   <u>The allegedly false statements cannot support Plaintiff's antitrust claims.</u>   Courts require something more—such as a "coercive enforcement mechanism"—before they will permit a competitor's false or deceptive advertising statements to form the basis for antitrust liability. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1127 (10th Cir. 2014) (discussing, but not adopting, rebuttal presumption); *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 916 (2d Cir. 1988); *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834,

851 (7th Cir. 2011) ("As a general matter, such statements are outside the reach of the antitrust laws, however critical they may be of a competitor's product or business model" and even if false.). In this case, Plaintiff has not alleged the existence of any "coercive enforcement mechanism" here. Rather, Plaintiff's antitrust claims concern the alleged false advertising statements made by Defendants that were directed at Plaintiff *only*. Plaintiff has not alleged that this conduct impacted any other market participants or the market at large.

In its Response, Plaintiff argues that the challenged statements "had the potential to eliminate or did in fact eliminate competition," and thus it has overcome the presumption that trade disparagement does not constitute an antitrust injury. # 57, 13-14. As a practical matter, however, Plaintiff failed to establish that the statements on which it relies are "clearly false," "clearly material," "clearly likely to induce reasonable reliance," or any of the other factors described in *Lenox*. 762 F.3d at 1127; *see also* # 54, at 7-9. Even if the Court applies the rebuttable presumption discussed in *Lenox* here, Plaintiff's Amended Complaint fails to allege the necessary elements to overcome it.

D. <u>Plaintiff failed to establish a conspiracy for purposes of imposing Sherman Act liability</u>.

1. <u>The Anstel Defendants are incapable of conspiring with each other</u>. As set forth in the Anstel Defendants' Motion to Dismiss, Plaintiff's conspiracy to monopolize claims fail because the Anstel Defendants are incapable of conspiring. The general rule is that "officers and employees of a corporation are generally incapable of conspiring with the corporation or with each other" for purposes of Sherman Act liability. *Holter v. Moore & Co.*, 702 F.2d 854, 855 (10th Cir. 1983). Plaintiff urges this Court to disregard the general rule that employees cannot

conspire with their employer for antitrust purposes. # 57, at 17-19 (citing *Bell v. Fur Breeders Agric. Co-op.*, 348 F.3d 1224 (10th Cir. 2003)). Plaintiff, however, failed to plead allegations that would allow the Court to apply this limited exception.

The basis for Plaintiff's argument that the limited exception applies is that the individual employees received sales commission as part of their compensation. # 57, at 18. Plaintiff, however, cites no authority to support its argument that because the individually named Defendants received sales commission as part of their pay from Anstel Marketing the limited exception applies. More problematic, however, is the fact that the Tenth Circuit has expressly recognized that "[p]ayment by commission" is "not [a] dispositive factor[] in determining whether there is one or many entities" for antitrust purposes. *Holter*, 702 F.2d at 856-57 (rejecting application of "independent personal stake" doctrine and holding that independent sales agents of real estate broker were employees for antitrust purposes, and thus, could not conspire with the real estate brokerage firm or each other). In finding the "independent personal stake" doctrine inapplicable in *Holter*, the Tenth Circuit stated that the "'independent personal stake doctrine' applies *only* when the officer has an outside economic interest, such as ownership of a competing corporation, through which he will benefit from the restraint." *Id.* at 857 n.8 (emphasis added); *see also Rivas v. State Bd. of Community Cs. & Occupational Educ.*, 517 F. Supp. 467, 472 (D. Colo. 1981) ("[A] conspiracy does not exist among a business entity and its employees where the employees act within the scope of their employment and without inconsistent personal motivations.").

In this case, like in *Holter*, Plaintiff failed to identify any such outside, inconsistent personal motivations held by Claire Lindsay, Annie Mullen, Barbara Robles, or Ellen Smith that

6

diverge from the interests of Anstel Marketing, their employer.  The limited exception, therefore, does not apply here.

    2. <u>The Anstel Defendants also are incapable of conspiring with the franchisor under the facts alleged.</u>  Defendant Anstel Marketing, a franchisee of TheHomeMag, is not a separate economic unit from the franchisor for antitrust purposes under the facts as alleged. *See Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, 2016 WL 8416760, at *5 (July 13, 2016) (recognizing that "franchisor setting up franchisees that were never meant to be competitors … could not conspire in restraint of trade"); *Alaska Rent-A-Car, Inc. v. Cendant Corp.*, 2007 WL 2206784, at *23-24 (D. Alaska July 27, 2007); *Williams v I.B. Fischer Nev.*, 17 F. Supp. 1026, 1032 (D. Nev. 1992) (franchisor and franchisee were single enterprise incapable of conspiring), aff'd 999 F.2d 445, 447 (9th Cir. 1993). ("[T]he franchisor does everything in its power to minimize competition and promote uniformity between franchises. This is for the benefit of both the franchisees and the franchisor … [T]heir economic unity of interest continues beyond the payment of the franchisee licensing fee."), *aff'd*, 999 F.2d 445, 447 (9th Cir. 1993) (finding that the franchisee and franchisor "comprise a 'common enterprise'").

Plaintiff, in its Response, argues that *American Needle*, involving a joint venture comprised of direct competitors, is similar to this case.  # 57, at 17-18.  But *American Needle* supports the Anstel Defendants' Motion to Dismiss under the facts as alleged in the Amended Complaint. Specifically, in *American Needle*, the Supreme Court articulated the key inquiry to be "whether there is a 'contract, combination …, or conspiracy' amongst 'separate economic actors pursuing separate economic interests,' such that the agreement 'deprives the marketplace of independent

7

centers of decisionmaking,' and therefore of 'diversity of entrepreneurial interests.'" *Am. Needle v. Nat'l Football League*, 560 U.S. 183, 195 (2010) (internal citations omitted).

Here, Plaintiff has alleged that "TheHomeMag enterprise is an affiliated group of businesses including THM Management, THM Front Range, THM Holding, The Home Improver, THM Ventura, and dozens of local franchisees."  # 21, ¶¶ 3-7, 17.  Critically, Plaintiff has not alleged any facts to establish that the economic interests between and among Defendants are *divergent* or that they are competitors of each other.  In fact, based on Plaintiff's allegations, Defendants could never compete because they are vertically-aligned as franchisor and franchisee or are located in entirely different geographic locations and do not compete. *Id.*, ¶¶ 56-60. As such, Plaintiff's claims, therefore, are fundamentally flawed.  *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283-84 (2018) ("Typically only 'horizontal' restraints—restraints 'imposed by agreement between competitors'—qualify as unreasonable *per se*.").  Plaintiff failed to allege any facts that would permit the Court to infer that the marketplace has been deprived of independent centers of decisionmaking, and therefore actual or potential competition. *Am. Needle*, 560 U.S. at 195.  As a result, the Court should find that Defendants should be treated as a single entity under *Copperweld*.

3.  <u>Plaintiff failed to allege an agreement.</u>  "[T]here can be no liability under § 1 in the absence of an agreement." *Fisher v. City of Berkeley*, 475 U.S. 260, 265 (1986) (citations omitted).  Plaintiff failed to allege any facts that the franchisees—each of which is in a different geographic location and market.  Plaintiff's conspiracy to monopolize claims, therefore, fail as a matter of law and should be dismissed.

E. *Defendants' franchisor-franchisee relationship cannot support Plaintiff's antitrust claims as alleged*. Plaintiff's reliance on the existence of the legal relationship between Defendants is insufficient to establish Sherman Act liability. "Economic power derived from contractual agreements such as franchises … has nothing to do with market power, ultimate consumers welfare, or antitrust." *United Farmers Agents Ass'n v. Farmers Ins. Exchange*, 89 F.3d 233, 236-37 (5th Cir. 1996). Moreover, the franchisees are not competitors—they reside in separate geographical markets that Plaintiff has alleged are not comparable (# 21, ¶¶ 56-60). *See Am. Express Co.*, 138 S. Ct. at 2283-84 ("Typically only 'horizontal' restraints—restraints 'imposed by agreement between competitors'—qualify as unreasonable per se.").

Plaintiff fails to allege any facts to support even an inference that the Defendants coordinated among themselves to enhance or maintain monopoly power in the particular market. Nor did Plaintiff allege any specific intent by Defendants to monopolize those markets. While Plaintiff argues in its Response that the Court should apply a "rule of reason" analysis (# 57, at 20), such an analysis fares no better because Plaintiff failed to properly allege an antitrust market. *See Helmeric & Payne Int'l Drilling Co. v. Schlumberger Tech Corp.*, 2017 WL 6597512 (N.D. Okla. Dec. 26, 2017) (citing *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 965 (10th Cir. 1994)).

In light of the above, as well as the arguments set forth in the Anstel Defendants' Motion to Dismiss, the Court should dismiss all seven of Plaintiff's antitrust claims.

## II. Plaintiff's Lanham Act Claim Should Be Dismissed.

A. *The allegedly false statements are not actionable*. In their Motion, the Anstel Defendants argued that the statements Plaintiff relies on cannot give rise to liability under the

Lanham Act. Specifically, the Anstel Defendants argued that the statements were not false on their face. *See* # 42, at 18. This Court raised similar concerns about the actionability of these statements in its Order Denying Plaintiff's Motion for Preliminary Injunction (# 54, at 8-9).

As the Anstel Defendants argued in their Motion, Plaintiff's own allegations establish that the July 5, 2018 email statements were not false. Specifically, Plaintiff alleges in the Amended Complaint that the "postage on the subject magazine issue was paid in full on June 26, 2018," even though the magazine "was supposed to be in homes Junes 25th." # 21, ¶¶ 23, 24. In other words, the magazine was mailed late. With respect to the August 2018 email and Media Kit statements, Plaintiff conflates certain concepts (percentage of readers who purchase products versus the response rates per advertiser), misinterprets others (the average net worth versus the median net worth), and alleges no facts to support its claim that any of the statements on which it relies is actually false or misleading. Plaintiff's opinions about what it believes to be the better approach to marketing does not render Defendants' statements false or misleading under the Lanham Act.

Plaintiff argues in its Response that even if the statements are not literally false, they fall within the category of being literally true, but likely to mislead and confuse consumers. # 57, 28. While Plaintiff did recite the elements of this claim in its Amended Complaint, it never asserted any facts to show that there was any reliance or confusion caused by these statements. Plaintiff was required to allege actual consumer deception, but it did not.[4]

In addition, Plaintiff did not respond to the Anstel Defendants' arguments that: (1) the July 5, 2018 email, which simply provided "advice," was not made for the purpose of commercial

---

[4] Plaintiff's reliance on *Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1079 (D. Colo. 2016) (cited in #57, at 29) is inapposite, as that case did not involve a Lanham Act claim.

advertisement or promotion, and thus could not form the basis for a Lanham Act claim. # 21, at ¶ 25; and (2) the statements in the August 2018 email and Media Kit were marketing representations and expressions of Defendants' opinions, and thus not actionable. #42, at 19 (relying on *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 Fed. App'x 778, 785-86 (10th Cir. Feb. 9, 2016)). For these additional reasons, the Court should find that the statements are not actionable for purposes of establishing a violation of the Lanham Act.

      B.    <u>Plaintiff failed to establish that the alleged statements were made in interstate commerce</u>. According to Plaintiff's Amended Complaint, the allegedly false statements were made in the Denver metro area and disseminated to home improvement contractors in the Denver metro area. *See* # 21 ¶¶ 19, 23, 34,103. As a matter of law, therefore, those statements cannot satisfy the interstate commerce requirement under the Lanham Act.

      C.    <u>Any damages are speculative, at best</u>. In its Amended Complaint, Plaintiff states that "as a direct result of these false and/or misleading statements, there is a likelihood of injury to GoDabo." #21, ¶ 105. Plaintiff argues in its Response that it has satisfied this element by claiming that several contractors have not or will no longer do business with it. # 57, at 30-31. In its Amended Complaint, however, Plaintiff merely alleges "upon information and belief" that the allegedly false statements caused the harm alleged and provides no factual basis for that connection. # 21, ¶¶ 26, 28, 30-31. As a result, its Lanham Act claim should be dismissed.

**III.**    **Plaintiff's Colorado Consumer Protection Act Claim Should Be Dismissed.**

      A.    <u>Plaintiff failed to allege a deceptive trade practice</u>. Plaintiff argues in its Response that the alleged false statements were material misrepresentations. Plaintiff, however, failed to allege that any of the businesses that received such statements were deceived by them. Plaintiff

11

also fails to allege facts to support Plaintiff's claim that such statements were false or misleading or that the Anstel Defendants acted with the intent to mislead and deceive Plaintiff. It, therefore, cannot establish that the Anstel Defendants engaged in an unfair or deceptive trade practice.

B.     <u>Plaintiff cannot satisfy the public impact element of its CCPA claim</u>.   While Plaintiff claims that Defendants' alleged deceptive acts significantly impacted the public as actual or potential consumers of Defendants' goods or services—a required element for any CCPA claim—the allegations on which this claim rests show otherwise. Specifically, none of the allegedly deceptive statements (which the Anstel Defendants also challenge as not satisfying the Rule 9(b) heightened pleading standard and puffery) were made to the public at large.

According to Plaintiff, the Anstel Defendants' marketing materials and challenged statements were made to businesses. # 21, ¶ 109. While Plaintiff claims these businesses are unsophisticated, Plaintiff does not allege that a single business was deceived by the allegedly false or deceptive statements about Plaintiff's or Defendants' goods. Nor is the public an actual or potential consumer of Defendants' goods or services, which are marketed and sold to businesses.

Furthermore, the single connection Plaintiff alleges to establish a potential impact on the public at large is speculative, at best. Plaintiff claims that the prices paid by businesses purchasing advertising from Anstel Marketing potentially will be passed on to consumers indirectly through the costs charged by those businesses in providing services to customers. *Id*. at ¶ 112. An *indirect* public impact, such as the one Plaintiff has alleged here, is insufficient to establish a CCPA claim as a matter of law. *See* # 42, at 21-23; *Netquote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1137 (D. Colo. 2007).

## IV.  The Court Should Decline to Exercise Supplemental Jurisdiction over Any Remaining State Law Claims.

In the event that the Court dismisses the federal claims against the Anstel Defendants, it should decline to exercise supplemental jurisdiction over any remaining state law claims. *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998), *quoted in Gray v. Univ. of Colo. Hosp. Auth.*, 2010 WL 3430785, at *5-6 (D. Colo. Aug. 30, 2010).  In its Response, Plaintiff failed to provide a compelling reason for why the Court should retain jurisdiction under those circumstances.  Instead, it argued that if the Court dismisses all federal claims against the Anstel Defendants, but not all other defendants, it should proceed with the state law claims.  # 57, n.7.  But the state law claims only involve the Anstel Defendants, so they clearly must rest on distinct facts.  The Court, therefore, should decline to exercise jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Plaintiff's claims against the Anstel Defendants fail as a matter of law for the reasons articulated above and in the Anstel Defendants' Motion to Dismiss (# 42).  As a result, the Court should grant the Anstel Defendants' Motion and dismiss all claims set forth in Plaintiff's Amended Complaint.

///

DATED: March 29, 2019.

        SNELL & WILMER LLP

        *s/Ellie Lockwood*
        James D. Kilroy
        Ellie Lockwood
        1200 Seventeenth Street, Suite 1900
        Denver, Colorado 80202
        Telephone: (303) 634-2000
        Facsimile: (303) 634-2020
        E-mail: jkilroy@swlaw.com
        E-mail: elockwood@swlaw.com
        ***Attorneys for Defendants***
        ***Anstel Marketing, LLC,***
        ***Claire Lindsay, Annie Mullen,***
        ***Barbara Robles, and Ellen Smith***

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, a true and correct copy of the above and foregoing **DEFENDANTS ANSTEL MARKETING, LLC, CLAIRE LINDSAY, ANNIE MULLEN, BARBARA ROBLES, AND ELLEN SMITH'S REPLY IN SUPPORT OF MOTION TO DISMISS** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Brett M. Godfrey | Thomas Quinn |
| Jeffrey S. Vail | Jacqueline R. Guesno |
| Lily Nierenberg | GORDON & REES SCULLY |
| GODFREY JOHNSON, P.C. | MANSUKHANI, LLP |
| 9557 South Kingston Court | 555 Seventeenth St., Suite 3400 |
| Englewood, Colorado 80112 | Denver, CO 80202 |
| Email: godfrey@gojolaw.com | Email: tquinn@grsm.com |
| Email: vail@gojolaw.com | Email: jguesno@grsm.com |
| Email: nierenberg@gojolaw.com | *Attorneys for Defendants THM Management,* |
| *Attorneys for Plaintiff* | *LLC, The Home Mag Holding Company, LLC,* |
| | *Campbell Wiener, Inc., dba THM of Ventura, and* |
| | *The Home Improver, LLC* |

                                               *s/Sandy Braverman*
                                               Sandy Braverman

4845-2135-0795